Pamela Sue JONES, Appellant,

v.

MEMORIAL HOSPITAL SYSTEM, et al., Appellees.

No. 01-87-00442-CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 25, 1988.

Bruce V. Griffiths, Peter Linzer, Houston, for appellant.

Michael R. Moore, Lawrence H. Clore, Fulbright & Jaworski, Houston, for appellees.

Before EVANS, C.J., and WARREN and DUGGAN, JJ.

OPINION

EVANS, Chief Justice.

The plaintiff, Pamela Sue Jones, appeals from a take-nothing summary judgment in favor of the defendants, Memorial Hospital System, R. William Warren, and Gene Ross.

The plaintiff, a registered nurse, was employed by Memorial Hospital System, and assigned to its intensive care unit. While so employed, she wrote an article, which was published in a local newspaper, expressing her concern about the conflict between the duty of hospital personnel to prolong life, and the right of terminally ill patients to die with dignity. When her employment was terminated after the publication of the article, she brought this suit alleging that Memorial Hospital System had infringed on her right to freedom of speech under article I, section 8 of the Texas Constitution. In an earlier summary judgment proceeding, the trial court granted the defendants' motion for a take-nothing summary judgment, deciding, as a matter of law, that the plaintiff could not recover on her stated cause of action. On appeal to this Court, we held that the summary judgment had been improperly granted because it was the defendants' burden, not the plaintiff's, to conclusively show that Memorial Hospital System was *not* a "public entity," such as would preclude the plaintiff from first amendment protection under the so-called "state action" doctrine. *Jones v. Memorial Hosp. System*, 677 S.W.2d 221, 226 (Tex.App.—Houston [1st Dist.] 1984, no writ).

After the case was remanded to the trial court, the plaintiff amended her petition to allege that Memorial Hospital System was "so substantially entangled" with state and

federal governments that its actions should "be treated as those of a governmental agency for purposes of constitutional adjudication," and that because her claim was based on state, rather than federal constitutional guarantees, her action was not dependent on a showing of the hospital's governmental status. The plaintiff also alleged that she had a common-law action for retaliatory discharge under the principles set forth in *Sabine Pilot Service v. Hauck*, 687 S.W.2d 733 (Tex.1985).

While the case was pending a trial on the merits, the trial court entered a second take-nothing summary judgment in favor of Memorial Hospital System and the other individual defendants, again deciding, as a matter of law, that the cause should be dismissed because of the plaintiff's failure to state a cause of action. That judgment is the subject of this appeal.

In two points of error, the plaintiff contends that the trial court erred in holding, as a matter of law, (1) that the termination of her employment by Memorial Hospital System was not an actionable violation of her guaranteed right of free speech under the Texas Constitution, and (2) that she did not have a legal claim for wrongful discharge under the public policy exception to the employment at will doctrine.

We need not consider the plaintiff's second point of error, because the first point of error is dispositive of the appeal.

Accordingly, the question presented is whether Memorial Hospital System's summary judgment evidence shows, as a matter of law, that the plaintiff does *not* have a legal cause of action for the alleged infringement of her constitutional right of free speech guaranteed by article 1, section 8 of the Texas Constitution.

Article 1, section 8 of the Texas Constitution provides:

Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or

of the press. In prosecutions for the publication of papers, investigating the conduct of officers or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court as in other cases.

The Interpretative Commentary to section 8 explains the nature of this constitutional guaranty:

Ever since the Constitution of the Republic, Texas has explicitly guaranteed the freedom of the people of the state to write, to publish, and to speak, the present Section 8 being a result of combining Sections 5 and 6 of Article I of former constitutions of the state. Thus, the fundamental law since 1836 has recognized the transcendent importance of such freedom to the search for truth, the maintenance of democratic institutions, and the happiness of individual men.

There is an important distinction between the free speech guarantee of article 1, section 8 of the Texas Constitution and the related, but quite different first amendment provisions of the federal constitution. The Texas Constitution, in positive terms, guarantees that every person has the right to speak, write, or publish their opinion on any subject. The federal constitution, on the other hand, expresses first amendment freedoms in negative terms, simply restricting governmental interference with such freedoms. Thus, the Texas constitutional provision, which is similar to those adopted in 38 other states, affirmatively guarantees that each individual shall have the right of free speech. *See Developments in the Law—The Interpretation of State Constitutional Rights*, 95 Harv.L.Rev. 1324, 1499 (1982).

 We accordingly hold that article 1, section 8 of the Texas Constitution constitutes an independent legal basis for a cause of action claiming an infringement of

the right of free speech guaranteed by that section of the state constitution. *See* Friesen, *Recovering Damages For State Bill of Rights Claims,* 63 Tex.L.Rev. 1269, 1280–1284 (1985); *Restatement (Second) of Torts,* sec. 874A (1979). Whether or not article 1, section 8 provides a cause of action against private entities, it minimally provides a cause of action against an entity so involved with government as to be functioning as a public entity. *See City School Dist. Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *State v. Schmid,* 84 N.J. 535, 423 A.2d 615 (1980) (applying "state action" doctrine to federal constitutional protections); *see also SHAD Alliance v. Smith Haven Mall,* 66 N.Y.2d 496, 498 N.Y.S.2d 99, 488 N.E.2d 1211 (N.Y.1985); *Cologne v. Westfarms Assoc.,* 192 Conn. 48, 469 A.2d 1201, 1207–1209 (1984) (involving state constitutional provisions similar to those of the Texas Constitution).

Accordingly, we proceed to analyze the issue in light of the current summary judgment record, recognizing, as we did in our earlier opinion, that Memorial Hospital System had the burden to affirmatively negate, as a matter of law, its status as a public entity. *Jones,* 677 S.W.2d at 226.

The distinctions between public and private functions have not been clearly drawn, *Greco v. Orange Memorial Hosp. Corp.,* 513 F.2d 873, 878 (5th Cir.), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975), and it has been suggested that each case must be analyzed and tested on the basis of its own particular facts. *Burton v. Wilmington Parking Auth.,* 365 U.S. at 722, 81 S.Ct. at 860.

The federal courts have used several broad tests in determining whether particular conduct constitutes public activity within the so-called "state action" doctrine. One such test is whether the government "has so far insinuated itself in its position of interdependence with the defendant that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Auth.,* 365 U.S. at 715, 81 S.Ct. at 856. Another test is whether there is a sufficient "nexus" between the government and the challenged action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The third and most recent test developed by the United States Supreme Court is the so-called "public function" doctrine. Under that test, the question is whether the private entity has exercised a function that is traditionally the exclusive prerogative of the State. *See Rendell–Baker v. Cohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Thus, it appears that a private entity, even if not strictly engaged in "state action," may be subject to the enforcement of first amendment rights, if its functions are essentially public in nature. *See State v. Schmid,* 423 A.2d at 622–630.

The federal court decisions indicate a number of factors that may be considered in deciding whether a private hospital functions as a public entity. *See* Annotation, *Action of Private Hospital as State Action Under 42 USCS sec. 1983 or Fourteenth Amendment,* 42 A.L.R.Fed. 463 (1979). Among these factors are:

(a) the extent to which the hospital may have received aid from governmental sources;

(b) the extent to which the hospital is subject to state regulation and inspection;

(c) whether the hospital is licensed or accredited to provide health care to the public;

(d) whether the hospital operates under a lease or grant from the state;

(e) the extent to which the hospital or its staff enjoys a monopolistic position in the community;

(f) the public purpose or function being served by the hospital;

(g) whether the hospital performs services previously performed by the state;

(h) the extent to which the hospital's governing board and staff are involved in a public function;

(i) any tax exemptions or benefits enjoyed by the hospital;

(j) the extent to which the hospital may be invested with governmental powers; and

(k) whether the hospital may deny access to medical staff or health services to the public at large.

We do not find any Texas court decisions indicating what test should be followed in applying the constitutional protections guaranteed by article 1, section 8 of the Texas Constitution. Because we are concerned with the affirmative provisions of the Texas Constitution, rather than first amendment freedoms of the federal constitution, we are not restricted to the same tests used by the federal courts. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 293, 102 S.Ct. 1070, 1076–77, 71 L.Ed.2d 152 (1982). We may, therefore, adopt a test that requires a lower threshold of public activity. *Id.; State v. Schmid*, 423 A.2d at 630.

For the purposes of this appeal, we will adopt a general standard similar to that alleged in the plaintiff's petition, that is, whether Memorial Hospital System was so substantially involved with state and federal activity, that its actions should be treated as those of a public entity for the purposes of constitutional adjudication. We will accordingly apply this test, in the light of the factors enumerated above, in our review of the summary judgment evidence.

■ The summary judgment evidence presented by Memorial Hospital System consists of two affidavits filed by one of the parties, R. Eugene Ross, vice-president of Human Resources for Memorial Care Systems. In his first affidavit, Mr. Ross states that Memorial Hospital System is a non-profit corporation, engaged in providing health care, that the hospital's affairs are managed by a 29–member board of trustees, and that there is no requirement that any of its members be governmental officials. He states that, at the time in question, only one board member, a city councilman, held a position with a governmental entity. He states that the hospital is engaged in educational activities through affiliation agreements with various private and public institutions of higher learning and lists nine such entities, including the University of Texas. He states that Memorial Hospital System operated a hospital for Waller County, but that the plaintiff did not work at that facility during the period of her employment. In his second affidavit, Mr. Ross denies that Memorial Hospital System was ever directly affiliated or associated with any medical center "having a medical school as an integral part of its establishment." He also denies that the hospital ever exercised or threatened to exercise any power of eminent domain or that any of its property had been acquired through such a process. He states that the hospital's affiliation agreements with private and public institutions of higher learning provide interaction with the hospital's employees, a necessary part of the practice of medicine. He denies that the hospital's physicians or faculty exercised any right of control over the employment decisions of the hospital, and states that no outside entity, including the University of Texas, exercised any control or exerted any pressure on the hospital to terminate the plaintiff's employment.

In the plaintiff's response to the motion for summary judgment, she refers to a number of admitted "facts," which, she claims, show the "considerable interconnection" between Memorial Hospital System and "assorted" state and federal governmental entities. Specifically, she points to summary judgment proof tending to show that Memorial Hospital System reports to some 31 governmental agencies; that it receives grants from both state and federal governments; that it is involved in cooperative education programs with at least 16 public entities, requiring that its employees train, supervise, and/or evaluate students enrolled in public educational institutions; that 64 members of its medical staff serve on the faculty of such public institutions; that it is licensed by the State of Texas and

operates a county-owned hospital, "Memorial Hospital Waller County"; that it enjoys a 50% tax-exempt status under section 170(b) of the Internal Revenue Code of 1954; and that it has the power of eminent domain under Tex.Rev.Civ.Stat.Ann. art. 3183b–1 (Vernon 1968). She also points to summary judgment documents indicating Memorial Hospital's participation in "a comprehensive system of government health planning" with the Texas Health Facilities Commission to develop "systematic health planning for the entire State of Texas"; and that Memorial Hospital System participated in 39 different proceedings before this Commission; and she refers to a "Certificate of Need" application filed by Memorial Hospital System with that Commission seeking authority to construct an 82–bed general hospital in western Harris County. That application contains representations that the hospital will meet all licensing, accreditation, and regulatory requirements, and will provide "a comprehensive spectrum of care for the community," assuring "all individuals" access to medical care regardless of their ability to pay.

Texas, by constitutional amendment and legislative enactment, has become extensively involved in the health care field. *See e.g.*, Tex. Const., art. IX, sec. 4; Tex.Rev. Civ.Stat.Ann. art. 4494r (Vernon 1976 & Supp.1988) (County Hospital Authority Act); Tex.Rev.Civ.Stat.Ann. art. 1015(4) (Vernon Supp.1988) (county authority to regulate private hospitals). Indeed, the Hospital Licensing Law, which subjects private hospitals to licensing and regulatory authority of the State Department of Health, declares the state's policy "to protect and promote the public health and welfare." Tex.Rev.Civ.Stat.Ann. art. 4437f(3) (Vernon 1976). *See also* Health Planning and Development Act, Tex.Rev.Civ.Stat. Ann. art. 4418h (Vernon 1976 & Supp.1988) (providing for a state-wide health care services plan).

Whether a private hospital has actually functioned as a public entity involves a mixed question of fact and law. To make an accurate determination of that issue requires a full development of all relevant facts and a careful consideration of all pertinent laws. Here, there appears to be no substantial dispute about the evidentiary statements related in the summary judgment affidavits. But there is a sharp disagreement about the inferences to be drawn from and the weight to be accorded that proof. Furthermore, our review of the record and applicable statutes suggests that additional circumstances bearing on the issue may be developed in a trial on the merits.

A summary judgment should not be granted unless the movant conclusively shows by the summary judgment proof that there is no dispute about: 1) the credibility of the affiants or deponents; 2) the inferences that may properly be drawn from the evidence; or 3) the weight to be given such proof. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952); *Davis v. State,* 321 S.W.2d 636 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r. e.); *Roberson v. Allstate Ins. Co.,* 278 S.W. 2d 179 (Tex.Civ.App.—Waco 1955, writ ref'd n.r.e.).

We conclude, once again, that the defendants have not met their burden of proving, as a matter of law, that the plaintiff has no legal right to assert a cause of action against them for the alleged infringement of her right of free speech guaranteed by the state constitution. We reach this conclusion because the defendants have not produced summary judgment evidence negating, as a matter of law, the plaintiff's allegations that Memorial Hospital System was so involved in state and federal activity, that its actions should be treated as those of a public entity for the purpose of upholding the state constitutional right of free speech. We accordingly hold that the trial court erred in granting the take-nothing summary judgment, and that the judgment must be reversed and the cause remanded for a new trial.

In view of the necessity for further proceedings, we expressly refrain from mak-

ing any comment on the merits of the parties' respective contentions. But noting that the ultimate determination of the issue will turn largely on circumstantial evidence and the inferences to be drawn therefrom, we suggest that such a determination may best be accomplished after full development of all relevant facts and law in a traditional trial. *See Pattison v. Highway Ins. Underwriters,* 292 S.W.2d 694, 699 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.). Moreover, the issue is obviously one of considerable public interest, and such matters should usually be decided only after a full trial on the merits. *See Little v. Bryce,* 733 S.W.2d 937, 939 (Tex. App.—Houston [1st Dist.] 1987, no writ); *City of Houston v. Southern Pac. Transp. Co.,* 605 S.W.2d 717 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *see also Kennedy v. Silas Mason Co.,* 334 U.S. 249, 257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347 (1948).

The trial court's summary judgment is reversed, and the cause is remanded for further proceedings.