weaver 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-91-129-CV





MARK WEAVER AND CITIZENS AGAINST PORNOGRAPHY, INC.,



 APPELLANTS


vs.





AIDS SERVICES OF AUSTIN, INC.,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 433,683, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 





 Mark Weaver and Citizens Against Pornography, Inc. (CAP) challenge a summary
judgment rendered in favor of Aids Services of Austin, Inc. (ASA) in which the trial court ruled
that ASA was not a state actor when it excluded Weaver from its "safer-sex" workshops. The
trial court subsequently issued an injunction permanently barring Weaver and other CAP
members (1) from attending or otherwise interfering with ASA's safer-sex workshops, and from
entering the premises of the Metropolitan Community Church while ASA is occupying the
premises. We will affirm the trial-court judgment.



I.  BACKGROUND


 ASA is a private, nonprofit corporation created to provide services to people with
AIDS, and to educate both the general public and target groups about AIDS prevention. 
Beginning in 1987, ASA contracted with Travis County and the City of Austin to perform a
number of AIDS-education services, as well as public health and welfare services for persons with
AIDS and their families. The contract called for ASA to conduct safer-sex workshops to provide
information on AIDS, to teach safe-sex techniques, and to encourage healthy lifestyles.

 Weaver is a well-known and vocal opponent of homosexuality. Because of
concerns that Weaver's presence would discourage others from participating, ASA representatives
contacted Weaver and requested that he not attend the workshops. On November 20, 1987,
Weaver nonetheless tried to attend a safer-sex workshop held at the Metropolitan Community
Church. When Weaver arrived at the church, an ASA representative asked him to leave; Weaver
refused and the representative called the police. A police officer arrived, and asked Weaver to
leave; when Weaver refused, the officer arrested him for criminal trespass. Nothing in the record
suggests that Weaver engaged in any disruptive conduct at the church. Weaver has stated that his
intent was to observe the workshop activities so that he could "inform the general public about
how its public officials were spending public funds."

 After his expulsion from the November 20th workshop, Weaver threatened to
attend a workshop scheduled for the following month. Consequently, ASA initiated this
declaratory judgment suit, seeking both a declaration of its rights to exclude Weaver and an
injunction to prevent Weaver from attending future workshops, trespassing on premises where
workshops are being held, publicizing the identities of those attending the workshops, and
otherwise interfering with the workshops. See Uniform Declaratory Judgments Act, Tex. Civ.
Prac. & Rem. Code Ann. §§ 37.001-.011 (1986 & Supp. 1992). Weaver filed a counterclaim
under title 42, sections 1983 and 1988, alleging that by excluding him from the workshops, ASA
violated his federal and state constitutional rights of free speech, assembly, and association under
color of state law. See U.S. Const. amend. I; Tex. Const. art. I, § 8; 42 U.S.C. §§ 1983, 1988
(1988).

 The parties filed cross-motions for summary judgment. The district court denied
Weaver's motion and granted ASA's motion, ruling that ASA is a private entity and,
consequently, is entitled to exclude Weaver from its workshops and premises. The trial court also
issued a permanent injunction prohibiting Weaver from further interfering with the workshops or
trespassing on the premises of the Metropolitan Community Church. Finally, the trial court
awarded ASA $37,200 in attorney's fees. 



II.  DISCUSSION


 In his first three points of error, Weaver argues that the trial court erred as a matter
of law (2) in finding insufficient state action and, thus, granting summary judgment for ASA because
(1) the workshop was a limited public forum, (2) ASA and the State were joint participants in
depriving Weaver of his constitutional rights, and (3) the evidence demonstrates that ASA engaged
in state action under the Texas Constitution.

 Weaver contends that ASA was so substantially involved with state activity that its
actions in removing him from the safer-sex workshops, having him arrested, and seeking a
restraining order and injunction against him constitute state action for the purposes of
constitutional adjudication. ASA responds that the trial court properly granted summary judgment
in its favor because ASA is a private entity, not a state actor, and consequently was entitled to
exclude Weaver from its workshops. We agree.

 "[A] private actor cannot actionably suppress first amendment rights." Albright
v. Longview Police Dept., 884 F.2d 835, 841 (5th Cir. 1989). Because the constitutional
protection of free speech applies only to actions of governmental entities, this Court can grant
Weaver's requested relief only if it finds state action. See Lugar v. Edmondson, 457 U.S. 922,
936 (1982); Flagg Bros. v. Brooks, 436 U.S. 149, 156 (1978). Therefore, we must decide
whether the claimed infringement of Weaver's constitutional rights is fairly attributable to the
State.

 Although the United States Supreme Court has not formulated a precise test for
identifying what degree of state involvement is sufficient to convert a private person's conduct into
state action, three lines of state-action doctrine emerge from the Supreme Court cases: the
"symbiotic relationship" doctrine, the "public function" doctrine, and the "nexus theory."

 The Supreme Court has applied the "symbiotic relationship" doctrine to cases in
which the government has "so far insinuated itself into a position of interdependence [with the
private entity] that it must be recognized as a joint participant in the challenged activity." Burton
v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961). Under the "public function" doctrine,
when the state entrusts a private individual or group with the performance of functions that are
traditionally governmental in nature, the acts of the individual or group become clothed with state
action. See Flagg Bros. v. Brooks, 436 U.S. 149 (1978). And under the "nexus theory," if the
government is sufficiently involved in, encourages, or benefits from the actor's conduct, the
private party's conduct will be deemed a state act subject to governmental review. Jackson v.
Metropolitan Edison Co., 419 U.S. 345, 351 (1974).

 Although these doctrines guide our resolution of this cause, we note that the
Supreme Court indicated in Burton that whether state action exists in a particular situation can be
determined only "by sifting facts and weighing circumstances." 365 U.S. at 722. Accordingly,
we must sift the facts and weigh the circumstances in the present cause to determine whether
ASA's actions with respect to Weaver involve state action.

 Weaver bases his claims of state action on his arrest for criminal trespass, the
injunctions against him, and ASA's contractual relationship with the City of Austin and Travis
County. (3) First, Weaver claims that the State participated with ASA in assisting and encouraging
Weaver's arrest for criminal trespass and in obtaining the injunction against him. He contends
that these actions establish a nexus between the State and ASA's discriminatory conduct. Weaver
makes these assertions, however, without pointing to any evidence that any government official
coerced, encouraged, or even suggested the actions taken by ASA representatives. Thus, we
reject Weaver's contention.

 Weaver next points to the existence of the contracts between ASA, the City of
Austin, and Travis County as evidence of state action. The first contract between ASA and these
governmental entities was effective from May 1, 1987, through September 30, 1988, and provided
ASA with $136,579 of city and county funds. The second contract was effective from October
1, 1988, through September 30, 1989, and it increased funding to $234,836.

 The contracts spell out the services that ASA contracted to perform for the city and
county, one of which is the safer-sex workshop at issue in this cause. In addition to listing
services to be performed by ASA, the contracts discuss program objectives, funding and budget
matters, and require ASA to maintain records of expenses related to the contract. The contracts
also require ASA to submit documents such as an operational plan and quarterly progress reports
to the funding agencies for review.

 Although the contracts regulate ASA in many ways, they impose virtually no
conditions on how to structure or run the workshops. With respect to the safer-sex workshops,
the 1987 contract states only the following:



5. Conduct safe sex workshops.


 Target groups: All.


 Note: For gay and bisexual men and women, workshops will focus on
safe sex techniques and encourage healthy lifestyles. For
heterosexual men and women, information on AIDS will be
provided within a larger context of human sexuality and/or
contraception issues.



The 1988 contract speaks to the safer-sex workshops only in terms of the number of workshops
ASA must offer during the contract's term.

 In Rendell-Baker v. Kohn, 457 U.S. 830 (1982), the Supreme Court found no state
action in a situation factually similar to the one in this cause. In that case, the Court held that a
private, nonprofit school whose income was derived ninety percent from public funding, and
which public authorities regulated, did not commit state action when it fired a counselor. 457
U.S. at 831. That school had contracts with both the state and city to provide individualized
education for adolescents with drug, alcohol, and emotional problems. Id. at 833.

 After discussing public funding, the extensive state regulation involved in the case,
the public function that the school served, and the relationship between the school and the state
government, the Court concluded that the school's act of firing an employee was not the act of
the State. Id. at 839-43. The Court stated that "[t]he school . . . is not fundamentally different
from many private corporations whose business depends on contracts to build roads, bridges,
dams, ships, or submarines for the government. Acts of such private contractors do not become
acts of the government by reason of their significant or even total engagement in performing
public contracts." Id. at 840-41 (emphasis added).

 The purpose of the state-action requirement is "to assure that constitutional
standards are invoked only when it can be said that the State is responsible for the specific conduct
of which [a party] complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in
original). "[A] State normally can be held responsible for a private decision only when it has
exercised coercive power or has provided such significant encouragement, either overt or covert,
that the choice must in law be deemed to be that of the State." Rendell-Baker, 457 U.S. at 840
(citing Blum, 457 U.S. at 1003) (emphasis added).

 Nothing in the record indicates that ASA's decision to exclude Weaver from its
workshops can be ascribed to a governmental decision. Neither contract directs ASA to admit or
exclude certain persons from its workshops, and ASA submitted summary judgment proof that
it independently exercised its discretion in deciding to exclude Weaver from the safer-sex
workshops. We conclude that no state action entered into in ASA's decision to exclude Weaver. 
Absent state action, ASA cannot be said to have violated Weaver's constitutional rights.

 In addition to the arguments made above, Weaver contends that ASA engaged in
state action under article I, section 8 of the Texas Constitution because Texas requires a lower
threshold of public activity for a finding of state action. Weaver supports his argument with Jones
v. Memorial Hospital System, 746 S.W.2d 891 (Tex. App. 1988, no writ), in which a nurse
alleged that a hospital infringed her right of freedom of speech when it terminated her employment
for writing a controversial newspaper article. The Jones court enunciated a test for state action
in which it looked at whether the hospital system was "so involved with state and federal activity
that its actions should be treated as those of a public entity for the purposes of constitutional
adjudication." (4) Id. at 895. The Jones court remanded that cause for a trial on the merits because
the court could not conclude as a matter of law that the hospital was a state actor despite the fact
that the hospital received federal and state grants, reported to thirty-one governmental agencies,
had cooperative education programs with numerous public entities, operated a county-owned
hospital, was regulated and licensed by the state, and had the power of eminent domain. Id. at
895-97. Jones does not alter our conclusion that ASA is not a state actor, since ASA's public
involvement is much less extensive than that present in Jones.

 Because we conclude that there was no state action present in ASA's decision to
exclude Weaver from the safer-sex workshops, we overrule Weaver's first three points of error.

 In his fourth point of error, Weaver complains that the trial court erred in awarding
ASA attorney's fees under the Uniform Declaratory Judgments Act. See Tex.Civ. Prac. & Rem.
Code Ann. § 37.009 (1986). The Act states that "[i]n any proceeding under [the Uniform
Declaratory Judgments Act], the court may award costs and reasonable and necessary attorney's
fees as are equitable and just." Id.

 First, Weaver contends that ASA is seeking a declaratory judgment that he
committed a trespass. Since trespass is a cause of action sounding in tort, he reasons that ASA
is manipulating the Act in order to recover attorney's fees. Weaver further argues that ASA's
request for declaratory judgment does not support a recovery of attorney's fees because it adds
no coercive relief in addition to that sought through ASA's trespass claim and injunction.

 We agree that a party may not recover attorney's fees by requesting a declaratory
judgment on a tort claim. See Barnett v. City of Colleyville, 737 S.W.2d 603, 606-607 (Tex.
App. 1987, writ denied) (disallowing attorney's fees in a suit to abate a public nuisance); First
Nat'l Bank v. Anderson Ford-Lincoln-Mercury, 704 S.W.2d 83, 85 (Tex. App. 1985, writ ref'd
n.r.e.) (no recovery of attorney's fees for successfully prosecuting a negligence action). 
However, we reject Weaver's attempt to characterize this cause as a request for declaratory
judgment appended to a mere trespass claim for the purpose of providing an "avenue to attorney's
fees." Although the event that triggered this entire controversy was Weaver's attendance at the
November 20th workshop and his subsequent arrest for criminal trespass, this cause is not about
an individual's liability in a tort action. The record does not indicate that ASA has a trespass suit
pending against Weaver.

 ASA asked the trial court for a declaration of ASA's rights to conduct its
workshops and other programs constituting its performance of its contracts with the City of Austin
without Weaver's interference. The Uniform Declaratory Judgments Act states that a court "has
power to declare rights, status, and other legal relations whether or not further relief is or could
be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (1986). The right to exclude
Weaver necessarily hinges on ASA's status as a private actor, the proper construction of ASA's
contract with the city and county, and a judicial determination of the effect of ASA's receipt of
public funding on its right to control participation in its workshops. ASA sought affirmative
declaratory relief on these issues from the outset of this cause.

 We conclude that the trial court properly settled general controversies regarding
ASA's status as a private rather than state actor. The Uniform Declaratory Judgments Act states
that "[f]urther relief based on a declaratory judgment or decree may be granted whenever
necessary or proper." Tex. Civ. Prac. & Rem. Code Ann. § 37.011 (1986). Thus, ASA
correctly combined its request for declaratory relief with a request for an injunction. See Davis
v. Pletcher, 727 S.W.2d 29, 35 (Tex. App. 1987, writ ref'd n.r.e.). Accordingly, we overrule
point of error four.

 In his fifth point of error, Weaver contends that the trial court's final judgment is
erroneous because it includes judgment against a separate entity, the American Family Association
of Texas (AFAT). He argues that AFAT was neither served nor made a party before the
summary judgment hearing and final judgment in this cause.

 The final judgment rendered in this cause runs against Mark Weaver and CAP
doing business as AFAT. Although ASA's original petition makes no mention of AFAT, the
record in this cause shows that ASA amended its petition in September 1989 to sue CAP in both
names. The amended petition states that "[s]ince approximately December 1987, C.A.P. has also
been known as the 'American Family Association of Texas.'"

 Texas Rule of Civil Procedure 28 states that a plaintiff may sue a corporation in
its assumed or common name for the purpose of enforcing against it a substantive right. Tex. R.
Civ. P. Ann. 28 (Supp. 1992). If a party objects to the name under which it is being sued, it is
required to raise the objection either by motion under Rule 28 or by verified pleading under Rule
93. Id.; Tex. R. Civ. P. Ann. 93(2), (4) (Supp. 1992). The record does not reflect that CAP
ever complained of any defect of parties or of a lack of capacity to be sued as "d/b/a American
Family Association of Texas." Consequently, AFAT is bound by the trial court's judgment.

 Moreover, if appellants are correct in contending that AFAT is an entity wholly
separate from CAP, then Weaver and CAP lack standing to assert AFAT's rights. Only the
person whose primary legal right has been breached may complain on appeal. Sherry Lane Nat'l
Bank v. Bank of Evergreen, 715 S.W.2d 148, 152 (Tex. App. 1986, writ ref'd n.r.e.). Instead,
AFAT must assert its own objections to the judgment in a collateral attack. See Browning v.
Placke, 698 S.W.2d 362, 363 (Tex. 1985).

 We conclude that the trial court properly rendered judgment against "CAP d/b/a
AFAT." Accordingly, we overrule this point of error.



Disposition



 We affirm the judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed: August 12, 1992

[Publish] 
1.   For simplicity, we will refer to appellants collectively as "Weaver."
2.   Summary judgment is appropriate only when there exists no genuine issues of
material fact and one party is entitled to judgment as a matter of law. See Nixon v. Mr.
Property Management, 690 S.W.2d 546, 548 (Tex. 1985). Weaver does not contend that
disputes as to material facts exist, but the parties sharply disagree about the inferences to be
drawn from the evidence. 
3.   Weaver contends that these factors establish state action under both the state and
federal constitutions.
4.   In enunciating this test, the Jones court noted that no state precedent exists to
determine whether particular conduct is state action under the state constitution. The court
stated that because Texas courts are not restricted to the same tests used by federal courts, it
was free to adopt a test that requires a lower threshold of public activity. The court then
applied its newly formulated test in light of a number of factors federal courts had used in
deciding whether a private hospital functions as a public entity. Jones, 746 S.W.2d at 894-95. 
Although the Jones court implies that its test requires a lower threshold public activity, it does
not distinguish its test from federal precedent. We are not persuaded that the Jones court
articulated a test that differs substantially from federal precedent.