**ALBERTSON'S, INC., Appellant,**

v.

**Rachel ORTIZ and John Downes, Appellees.**

**No. 3–92–393–CV.**

Court of Appeals of Texas, Austin.

June 30, 1993.

Rehearing Overruled Aug. 11, 1993.

Stephan B. Rogers, Akin, Gump, Hauer & Feld, L.L.P., San Antonio, for appellant.

James C. Harrington, Texas Civ. Rights Project, Austin, for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Albertson's, Inc. appeals an adverse judgment rendered on a jury verdict awarding damages to Rachel Ortiz and John Downes ("appellees"). The principal issue presented is whether the Texas Constitution's bill of rights is self-executing in creating a cause of action for damages for a private entity's infringement of an individual's free-speech rights. Concluding that the constitution creates no such tort action, we will reverse the judgment of the trial court and render judgment that appellees take nothing.

## BACKGROUND

Since 1984 the United Farm Workers of America [1] ("UFW") has unsuccessfully attempted to persuade California grape growers to enter into collective-bargaining agreements that would eliminate the use of pesticides and other chemicals that present health risks to workers and consumers. To bring pressure to bear on the growers, the UFW has sought a national boycott of California grapes. As part of these efforts, volunteer supporters of the UFW routinely distribute leaflets to customers of various grocery stores, informing them of the boycott and soliciting their support. One such effort brought volunteers Ortiz, Downes, and Charles Race, along with Barbara Ritter, a UFW staff member, to an Albertson's store in southeast Austin on August 11, 1989.

The UFW supporters stationed themselves on the sidewalk and parking-lot thoroughfare in front of the store's main entrance in order to approach customers, distribute leaflets, and solicit signatures on a petition. The store manager informed the UFW supporters of appellant's no-solicitation policy, asked them to leave, and said he would have to call the police if they refused. Appellees and the others insisted that they were only peacefully exercising their constitutional right of free speech. The manager gave a second warning, which was also ignored; the police were

1. The United Farm Workers of America, AFL–CIO, is the collective bargaining representative of a number of farm workers in California.

called. After the police arrived, the manager again urged the UFW supporters to leave, and they again refused. Ortiz, Downes, Ritter, and Race were then arrested, taken to the police station, briefly jailed, and later released.

Albertson's pressed criminal-trespass charges against the four UFW supporters, who were tried and acquitted. These four, plus the UFW, then sued Albertson's seeking declaratory and injunctive relief as well as damages for abuse of process, malicious prosecution, and the denial of individual rights protected under the Texas Constitution. After trial, the jury returned a verdict against all the plaintiffs on their abuse of process and malicious prosecution claim and found that Albertson's had not interfered with UFW and Ritter's constitutional freedoms but had unreasonably interfered with the freedom of speech of Ortiz and Downes.[2] The trial court rendered judgment on the verdict awarding $750 each to Ortiz and Downes and denied all other relief. Albertson's appeals, attacking the award of damages to appellees by six points of error.

## DISCUSSION

### Federal Preemption

■ Before reaching the dispositive question presented, we must address appellant's jurisdictional argument under its first point of error—that the trial court erred in entertaining appellees' suit because their claim is preempted by the National Labor Relations Act, 29 U.S.C. §§ 151–160 (1988) ("the Act"), and is within the exclusive jurisdiction of the National Labor Relations Board ("the Board"). In passing the Act, Congress intended to bring uniformity to the regulation of labor disputes, centralizing administration of federal labor law in the Board. State law that potentially conflicts with national labor policy is preempted. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). How-

ever, the Act excludes agricultural laborers from its coverage. 29 U.S.C. § 152(3) (1988). As a union composed of agricultural workers, the UFW is not covered by the Act. *United Farm Workers v. Superior Court*, 4 Cal.3d 556, 94 Cal.Rptr. 263, 269–71, 483 P.2d 1215, 1221–22 (1971); *Johnson Bros. Wholesale Liquor Co. v. United Farm Workers Nat'l Union*, 308 Minn. 87, 241 N.W.2d 292, 296 n. 1 (1976).

■ Albertson's argues that plaintiffs' claims all present an unfair-labor-practice action in disguise and, because Ortiz and Downes are not themselves agricultural workers, the claims presented are governed by the Act. We disagree. Although Ortiz and Downes are active supporters rather than members of the UFW, their efforts on behalf of the union do not destroy the UFW's exemption from the Act. *See DiGiorgio Fruit Corp. v. National Labor Relations Bd.*, 191 F.2d 642, 648 (D.C.Cir.), *cert. denied*, 342 U.S. 869, 72 S.Ct. 110, 96 L.Ed. 653 (1951) (involvement of two nonagricultural-worker members of national parent labor union did not destroy agricultural status of farm union). Concluding that the Act did not preempt the claims asserted below, we overrule the first point of error.

### Constitutional Action for Damages

■ We next consider appellant's third point of error—that no cause of action exists in Texas to support the award of damages against Albertson's for infringement of appellees' rights of free expression under article I, section 8 of the Texas Constitution. This section provides in pertinent part: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege...." Tex. Const. art. I, § 8. We acknowledge that our state constitution has independent vitality and affords rights of expression beyond those found in the federal constitution.[3] *Davenport v. Garcia*, 834 S.W.2d 4, 10–11 (Tex.1992). However, in order to affirm the trial court's

---

**2.** Race took a nonsuit before trial; Ritter and the UFW are not parties to this appeal.

**3.** We note that plaintiffs' causes of action were brought to enforce only their state constitutional rights; the pleadings expressly excluded any claims based on their federal rights.

judgment, we must infer directly from the constitution a cause of action to compensate appellees for appellant's infringement of their right of free speech; Texas has no statutory remedy similar to 42 U.S.C. § 1983 (1988), which creates a cause of action for interference with a party's federal civil rights.[4] Appellees ask this Court to infer a comparable compensatory remedy for violations of state constitutional rights and to eliminate any necessity that the infringement be perpetrated "under color of state law," as section 1983 requires.[5] Appellees rely on the contrast between the affirmative language of article I, section 8 and the First Amendment's restriction on governmental interference with speech to support their position that the Texas Constitution provides broader guarantees of free speech.

■ Various commentators and case law from other jurisdictions support appellees' suggestion that the individual freedoms secured by our strong bill of rights can be adequately enforced only by recognizing a compensatory cause of action for any infringement of those freedoms.[6] But appellees have cited no instance in which another Texas court has expressly inferred a constitutional cause of action for damages to redress a private entity's violation of an individual's freedom of expression.

To support its argument that a plaintiff can bring an action for damages directly under article I, section 8, appellees rely on *Jones v. Memorial Hospital System,* 746 S.W.2d 891 (Tex.App.—Houston [1st Dist.] 1988, no writ) (*Jones II* ). *See also Jones v. Memorial Hosp. Sys.,* 677 S.W.2d 221 (Tex.

4. Section 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983 (1988).

5. Appellees do not contend that appellant's actions giving rise to the suit below in any way constituted state action. Rather, as appellees expressly averred in their post-submission brief, "[T]he only question on this appeal is the extent to which Sections 8 and 27 [of the Texas Constitution] reach expansive public-access *private* property." (Emphasis added.) We take this statement as a concession that Albertson's is a wholly private entity, albeit one operating a facility open to the public. We note, further, that despite appellees' characterization of the issue presented, Tex. Const. art. I, § 27 formed no part of the trial-court judgment, and the matter of its reach is not before us on appeal.

6. *See generally* Jennifer Friesen, *Recovering Damages for State Bill of Rights Claims,* 63 Tex. L.Rev. 1269 (1985); *see also* John H. Bauman, *Remedies Provisions in the State Constitutions and the Proper Role of the State Courts,* 26 Wake Forest L.Rev. 237 (1991); William J. Brennan, Jr., *The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights,* 61 N.Y.U.L.Rev. 535 (1986); G. Alan Tarr, *Constitutional Theory and State Constitutional Interpretation,* 22 Rutgers L.J. 841 (1991);

*Developments in the Law—The Interpretation of State Constitutional Rights,* 95 Harv.L.Rev. 1324 (1982).

The following holdings from other jurisdictions recognize damages remedies for individual rights guaranteed by state constitutions: *Gay Law Students Ass'n v. Pacific Tel. & Tel. Co.,* 24 Cal.3d 458, 156 Cal.Rptr. 14, 595 P.2d 592 (1979) (recognizing cause of action for damages based on state equal-protection clause); *Schreiner v. McKenzie Tank Lines & Risk Management Servs., Inc.,* 408 So.2d 711, 714 (Fla.App.1982), *aff'd,* 432 So.2d 567 (Fla.1983) (holding that state constitutional provision prohibiting deprivation of rights on basis of race, religion, or physical handicap is self-executing); *Newell v. City of Elgin,* 34 Ill.App.3d 719, 340 N.E.2d 344 (1976) (recognizing cause of action for damages against police officers for violation of state constitutional rights); *Widgeon v. Eastern Shore Hosp. Ctr.,* 300 Md. 520, 479 A.2d 921 (1984) (acknowledging common-law action for damages to remedy violations of civil rights); *Phillips v. Youth Dev. Program, Inc.,* 390 Mass. 652, 459 N.E.2d 453, 457 (1983) (recognizing that judicial relief may exist for violations of state constitutional rights); *Smith v. Department of Pub. Health,* 428 Mich. 540, 410 N.W.2d 749 (1987), *aff'd on other grounds sub nom. Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (recognizing possible *Bivens* damage remedy for violation of individual right protected by state constitution); *Lloyd v. Borough of Stone Harbor,* 179 N.J.Super. 496, 432 A.2d 572, 580 (1981) (affirming damages award under New Jersey Tort Claims Act for violations of state constitutional rights); *Hunter v. Port Auth.,* 277 Pa.Super. 4, 419 A.2d 631 (1980) (finding cause of action under state constitution for denial of public employment).

App.—Houston [1st Dist.] 1984, no writ) (*Jones I*). In *Jones I & II*, the plaintiff, Jones, alleged that the hospital had infringed her free-speech rights under the Texas Constitution by terminating her employment. Jones claimed that the hospital fired her in retaliation for writing a newspaper article on the conflict between the duty of hospital staff to prolong life and patients' right to die with dignity. The trial court granted summary judgment for the hospital on the ground that Jones could not base her suit directly on the Texas Constitution. Although the Texas First Court of Appeals ultimately held that article I, section 8 constituted an independent legal basis for a cause of action claiming infringement of free-speech rights by a public entity, *Jones II*, 746 S.W.2d at 893–94, in neither case had Jones sought to recover *damages* based on that constitutional action. On the contrary, in *Jones I*, the court explained that Jones pleaded for declaratory judgment, by which she sought reinstatement to her former position. 677 S.W.2d at 225–26. Although Jones did, following remand, amend her petition to include a common-law action for retaliatory discharge, the *Jones II* opinion lacks any indication that Jones sought *damages* based on her constitutional claim under article I, section 8. Consequently, we decline appellees' invitation to read *Jones II* as authority for the proposition that article I, section 8 provides a cause of action *for damages* against a private entity, when that question was never before the court.[7] We likewise decline to recognize a compensatory cause of action to redress a wholly private entity's infringement of free-speech rights guaranteed by the state constitution.

To encourage this Court to recognize a constitutional action for damages in the absence of a statutory remedy, appellees also cite *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 395–97, 91 S.Ct. 1999, 2004–05, 29 L.Ed.2d 619 (1971), for the proposition that the infringement of a constitutional right itself gives rise to a compensatory action. We acknowledge the admonition given in *Bivens* that the judiciary has a particular responsibility to vindicate constitutional interests, even without explicit legislative authorization. *Id.* at 407, 91 S.Ct. 1999 (Harlan, J., concurring). But we cannot overlook the crucial distinction between *Bivens* and the present cause of action: Bivens' constitutional right to be free from unreasonable searches was violated by *government officials.* In recognizing a cause of action for damages, the Court emphasized that the type of harm which governmental officials can inflict is more pernicious than the harm private citizens may inflict on each other: "An agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Id.* at 392, 91 S.Ct. 1999. Furthermore, the *Bivens* Court recognized that a cause of action for damages might not be appropriate for every violation of a constitutional right; in each case, the court must ask if compensatory relief is necessary or appropriate to vindicate the particular constitutional interest asserted. In *Bivens* the Court noted that damages may be the only possible remedy for a victim of an illegal search and arrest when no criminal prosecution is pending: "It will be a rare case indeed in which an individual in Bivens' position will be able to obviate the harm by securing injunctive relief from any court." *Id.* at 410, 91 S.Ct. 1999 (Harlan, J., concurring). By contrast, injunctive relief is the surest cure for the denial of an expressive right such as that asserted here.

Finally, we note that even those commentators favoring judicial solutions to vindicate constitutional interests recognize that statutory remedies are preferable for a variety of reasons: (1) a statutory scheme can define the elements of, as well as the defenses and immunities to, the cause of action that would take years of appellate

---

**7.** Since the issuance of *Jones II*, in a case that did not present the question whether a plaintiff may recover damages for the infringement of free-speech rights, this Court has refused to recognize a constitutional action for infringement under Tex. Const. art. I, § 8 in the complete absence of state action. *See Weaver v. Aids Servs. of Austin, Inc.*, 835 S.W.2d 798, 802 (Tex. App.—Austin 1992, writ denied).

decision-making to refine; (2) a remedial statute can define potential defendants to include or exclude private persons, as well as those acting under color of state law; and (3) the legislative process elicits greater input from parties likely to be affected and requires education, debate, and consensus about the scope of the obligations created. *See* Friesen, 63 Tex.L.Rev. at 1284.

Despite this state's strong guarantees of freedom of expression, we decline appellees' invitation to infer from the Texas Constitution an action for damages to redress a private person's violation of another's freedom of speech. Finding no cause of action that would support the damages awarded by the trial court, we sustain appellant's third point of error.

## CONCLUSION

Having determined that no cause of action exists that would support an award of damages for infringement of appellees' constitutional right of free speech under article I, section 8 of the Texas Constitution, we need not consider appellant's other points of error. We reverse the judgment of the trial court awarding appellees damages and render judgment that appellees take nothing.