THE PEA PICKER, INC., Appellant,

v.

Winston REAGAN, et al., Appellees.

No. 1516.

Court of Appeals of Texas,
Tyler.

April 22, 1982.

Rehearing Denied May 20, 1982.

Otto B. Mullinax, Mullinax, Wells, Baab & Cloutman, Dallas, for appellant.

Willis D. Moore, Moore & Moore, Athens, for appellees.

McKAY, Justice.

Our former opinion in this cause is withdrawn and the following substituted therefor.

This is a declaratory judgment suit brought by the County Judge and Commissioners of Henderson County against The Pea Picker, Inc., publisher of a free weekly newspaper, for a construction of the Texas Open Meetings Act.

County Judge Winston Reagan, together with County Commissioners Jim Blakeney, Ned LaRue, Weldon Featherston and Leland Tarrant, appellees, brought suit under Art. 2524–1, Texas Revised Civil Statutes,[1] against The Pea Picker, Inc., appellant, to obtain a judicial decision whether meetings of the appellees held for the purpose of hearing reports from agents and employees of Henderson County and other governmental bodies, and at which appellees are not "attempting to arrive at a decision on any public business" are open meetings within the meaning of Art. 6252–17, § 1.

Appellant's answer pled that appellees' pleading failed to state a cause of action, generally denied appellees' pleading, and filed a cross-action alleging that appellees held a secret meeting on March 14, 1978, which caused $10,000 actual damages to appellant. *The Pea Picker* asked for exemplary damages of $50,000 plus attorney's fees of $10,000.

1. All article references are to Texas Revised Civil Statutes unless otherwise indicated.

The trial court granted appellees' motion for summary judgment, denied appellant's cross-action, and this appeal resulted.

In its final summary judgment the trial court found that there was "no genuine issue as to any material fact necessary to establish each and every element of the plaintiffs' cause of action and plaintiffs are entitled to judgment as a matter of law because,"

(a) a bona fide dispute exists between the parties regarding the interpretation of Art. 6252–17, in that appellees, members of the Commissioners Court, contend that such statute does not require that meetings of the Commissioners Court held for the purpose of hearing reports from employees and agents of the county and other government bodies be public meetings and open to the public, whereas appellant, purporting to be a bona fide member of the news media, contends that all such meetings are required to be public meetings and open to the public;

(b) appellees met with Robert Viterna, a representative of the Texas Jail Standards Commission, on March 14, 1979, for the purpose of hearing a report from him regarding the condition of the Henderson County Jail;

(c) no "deliberation," within the meaning of Art. 6252–17, § 1(b), occurred during such March 14, 1979, meeting.

The court further found that:

(a) meetings of the Commissioners Court, held for the purpose of hearing reports from agents and employees of Henderson County and other governmental bodies and at which such commissioners are not "attempting to arrive at a decision on any public business" are not open meetings within the meaning of Art. 6252–17, Sec. 1;

(b) that the meeting of March 14, 1979, between the members of the Commissioners Court and Viterna, a representative of the Texas Jail Standards Commission, was not a "public meeting" within the meaning of Art. 6252–17; and

(c) no "deliberation," within the meaning of Art. 6252–17, Sec. 1(b), occurred during such meeting of March 14, 1979.

The witness Robert O. Viterna, a representative of the Texas Commission on Jail Standards, testified that he was responsible for inspections, follow throughs and coordination with the counties helping them to come into compliance with the state jail standards. He said the commission inspects jails, sets standards for the construction of the facilities and the care, treatment, and supervision of the prisoners, and is generally entrusted with the security, safety, sanitation and suitability of jails. He further testified that the jail standards had become effective December 23, 1976, and the first inspection of the Henderson County jail was made July 1, 1977. The inspection showed some deficiencies in relation to the standards and such information was communicated to the County Judge and the Sheriff.

In further testimony Viterna said he was contacted by Judge Winston Reagan concerning coming to Henderson County and meeting with the County Judge and Commissioners Court and he came and met with them and "some other persons who had authority within the county" on March 14, 1978. He said he never suggested a closed meeting, that it was his understanding that it was "to be a meeting with the judge and the sheriff only to discuss it—it was not a meeting, it was only a discussion in the jail." There was no request by his office to exclude the press or the public, he met with the Sheriff in the Sheriff's office and they surveyed the jail, then came back to the County Judge's office; the Judge came in and the Auditor dropped by later, there were at least some other people present, and one or more of the Commissioners were introduced to him. So far as he knew there were no persons from the press there, he made no request to exclude anyone, and there was nothing disclosed by him at the meeting that he would not have disclosed if the press and public had been invited to be present.

Viterna further said the purpose of the meeting was to report to the County Judge and the Commissioners the status of the county jail in relation to the standards set

by the commission and to suggest any recommendations "as to what they could do to achieve compliance." He said he discussed "where the Henderson County jail did not meet the standards" and then talked about some of the good features of the jail. He further said he talked with a gentleman from the local radio station before leaving town, but did not recall talking to anyone representing *The Pea Picker*; however, he did talk long distance that night quite late to a woman affiliated with *The Pea Picker*. He said in his discussion with the County Judge and the Sheriff there was nothing in the meeting that the press or the citizens of the county were not entitled to know about.

The testimony of County Judge Winston Reagan may be summarized as follows: Personnel of the Texas Commission on Jail Standards had been in communication with him from time to time relative to Henderson County's compliance with the State requirements on jail standards. He and Viterna had set a date for Viterna to make a report to the Commissioners Court about the jail, but that date had to be postponed to March 14, 1978. Reagan had a docket call in his court that day but he had previously notified the County Commissioners that Viterna would be in Athens on the date agreed. He said the purpose of the meeting was for the Commissioners to hear Viterna's report about the jail. Viterna first met with the Sheriff on that day, and after the Judge completed his docket call he went to his office where the meeting with Viterna, the Commissioners and the Sheriff was in progress. Viterna made a general report and mentioned items he considered to be out of compliance and what he suggested needed to be done concerning the juvenile ward, the mentally ill, and the women. In the Judge's presence the Commissioners did not question Viterna. Reagan estimated the meeting lasted thirty minutes and he was present only about fifteen minutes. He did not hear the Sheriff or the Auditor say anything. The only conversation Reagan had with Viterna was when he asked Viterna if he would like to talk to the press, since he noticed they were not present. Viterna said he was in a hurry, had a tight schedule, and would be leaving in about ten or fifteen minutes.

Reagan was in his office that time about five minutes and noticed members of the press were not present. He asked his secretary if she had notified the press and she said she had not, and he told her she had better call. He then finished his docket call, went back to his office, and called either the *Athens Review* or the radio station. He said he did not notify *The Pea Picker*, and so far as he knew no one did. Immediately after the meeting "broke up" a representative of the *Athens Review* and a representative of the radio station were present.

About eight o'clock A.M. on March 14, 1978, a notice was posted by Reagan's secretary of an emergency meeting. Viterna had not arrived at that time. Reagan said he had the emergency meeting notice posted because he did not "know exactly what was going to transpire"—"didn't know what he was going to say and what they were going to say." He said he "didn't know exactly what meetings were required to be posted . . . ."

Reagan said he talked by telephone to Johnnie Johnson of *The Pea Picker* following the meeting with Viterna and he told her "that the man was there and that he had talked to the Commissioners about the jail," and she expressed "some displeasure" that she was not notified.

Appellant's first point asserts that no actual controversy or standing to sue existed in appellees "to give" an action for declaratory judgment in that each appellee sued in his individual capacity not as a public official or commissioners court. Appellant argues that Art. 6252–17, § 1(c) includes a Commissioners Court, but does not include commissioners as individuals or public officials—thus there could be no controversy between such individuals and *The Pea Picker* for which declaratory judgment will lie.

Art. 2524–1, § 2 (Vernon 1943) provides: *Any person* . . . whose rights, status, or other legal relations are affected by a Statute . . . may have determined any

question of construction ... arising under the ... Statute ... and obtain a declaration of rights, status, or other legal relations thereunder. (Emphasis added.)

Section 12 of the above article provides: "This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, statutes, and other legal relations; and is to be liberally construed and administered."

"The action for declaratory judgment 'is an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal and should not be hedged about by technicalities.'" *Porth v. Morgan*, 622 S.W.2d 470, 476 (Tex.Civ.App.—Tyler 1981, writ ref'd n. r. e.); *Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579, 583; Annot. 57 A.L.R.2d 97 (1955).

 Appellant contends that the meeting with Viterna by the County Commissioners and the County Judge was required to be open, and that appellant was entitled to prior notice, while appellees maintain that the March 14, 1978, meeting was not an open meeting, but was only to hear a status report on the County Jail. Since the parties were obviously uncertain whether the meeting in question was required to be open, in our view the trial court had power to construe the statute as to whether notice of such a meeting must be given, and when a meeting is required to be open. Appellant's first point is overruled.

Appellant's third point of error is that the trial court erred in granting appellees' summary judgment motion because a genuine issue of material fact existed as to (1) whether the meeting was a public meeting within the purview of Art. 6252–17, and (2) whether deliberation, as defined in Art. 6252–17, had occurred in relation to this meeting. We have examined the testimony of Reagan and Viterna and do not believe that the summary judgment was properly granted.

Art. 6252–17, § 1(a) reads in part:

"Meeting" means any *deliberation* between a quorum of members of a governmental body at which any public business or public policy ... is discussed or considered, or at which any formal action is taken ...." (Emphasis added.)

"Deliberation" is defined in 1(b) of the above article as "a *verbal exchange between a quorum of members* of a governmental body attempting to arrive at a decision on any public business." (Emphasis added.)

A summary judgment is proper when there is no genuine issue as to any material fact and the movant, as a matter of law, is entitled to judgment. The testimony of an interested witness which is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted" may entitle the movant to a summary judgment. Rule 166–A, Tex.R.Civ.P.

 Reagan was not present at all times while the Commissioners and Viterna were in his office. He could not know, and thus, could not and did not testify about what transpired in his absence. Reagan stated that in his presence the Commissioners did not question Viterna, and that in his presence the Commissioners did not discuss the issue among themselves. The testimony does not cover any period when the Commissioners were together without either Viterna or Reagan. Reagan's testimony, therefore, is not clear, positive and direct on the question of whether deliberation occurred. Moreover, Viterna's testimony does not supply facts sufficient to cure the deficiencies, for summary judgment purposes, in Reagan's testimony. Furthermore, there are no depositions in the record from any Commissioner, the Sheriff, or the auditor. Since there is a lack of evidence for the full period in question, we cannot conclude that there is no genuine issue as to any material fact. We sustain appellant's third point.

We do not reach appellant's other points.

Judgment of the trial court is reversed and the cause is remanded.

MOORE, J., not sitting.