

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

June 14, 1989

Mr. Charles Stevenson
Acting Commissioner
Texas Department of Human
    Services
P. O. Box 2960
Austin, Texas    78769

Opinion No.  JM-1058

Re:  Whether  the  Texas  Open
Meetings  Act    authorizes    a
governmental  body   to    hold
"briefing sessions" to receive
information from staff members
without providing notice
(RQ-1686)

Dear Mr. Stevenson:

You ask whether  the Texas Open  Meetings Act,  article
6252-17,  V.T.C.S.,  applies  to  orientation  or  briefing
sessions of  the Board  of Human  Services, at  which  board
members receive  information and  ask  questions of  staff
members but do not engage in discussion between  themselves.
This office  has issued  two opinions  concluding that  such
sessions were not  subject to the  requirements of the  Open
Meetings Act.    Attorney  General  Opinions  JM-640  (1987);
JM-248  (1984).

Attorney General  Opinion JM-248  relied on  the  trial
court's construction of the Open Meetings Act in <u>Pea Picker,
Inc., v. Reagan</u>,  632 S.W.2d  674 (Tex. App.  - Tyler  1982,
writ ref'd n.r.e.).  The court found that a meeting held  by
a commissioners  court to  hear  reports  from  agents  and
employees was  not  a  "meeting"  within  article  6252-17,
V.T.C.S.  The act then defined a "meeting" as "any delibera-
tion <u>between</u> a quorum of  members of a governmental body  at
which any public  business . . .  is discussed."   (Emphasis
added.)  <u>See</u> Acts 1973,  63d Leg., ch. 31, § 1, at 45.   If no
deliberations were held between members of the  governmental
body, then no "meeting" took  place and the requirements  of
the Open  Meetings Act  did  not apply. . <u>See also</u> Attorney
General Opinion  JM-640 (1987)  (oral exam  of applicant  by
licensing board was not a "meeting").

Senate Bill  168  of  the 70th  Legislature  adopted  a
number of amendments  to the Open  Meetings Act.   S.B.  168,
Acts 1987,  70th Leg.,  ch. 549,  at 2211.   The bill  added

language to the definition of "meeting" so that it now reads in part:

> (a)  'Meeting'  means  <u>any deliberation</u> between a quorum of members of a governmental body, or <u>between a quorum of members of a governmental body and any other person</u>, at which any public business . . . is discussed or considered . . . .  (Emphasis added.)

V.T.C.S. art. 6252-17, § 1(a).  The same language was added to the definition of "deliberation" so that it now reads as follows:

> (b)  'Deliberation'  means  <u>a verbal ex-change during a meeting</u> between a quorum of members of a governmental body, or <u>between a quorum of members of a governmental body and any other person</u>, concerning any issue within the jurisdiction of the governmental body or any public business.  (Emphasis added.)

<u>Id.</u> § 1(b).

A facial reading of the amended sections 1(a) and 1(b) yields more than one interpretation.  This office has found the Open Meetings Act applicable to a meeting called by a district judge and attended by a quorum of members of a county commissioners court if the commissioners engaged in deliberations.  Attorney General Opinion MW-390 (1981).  The Act has also been held to apply to a joint meeting of representatives of two or more governmental bodies if a quorum of members of one governmental body attends and engages in deliberations.  Attorney General Opinion MW-417 (1981); <u>see</u> Attorney General Opinion MW-28 (1979).  The amendments could have been adopted to make explicit this application of the Open Meetings Act.  However, the bill analysis prepared for Senate Bill 168 indicates that the amendments were designed to overturn the conclusion of Attorney General Opinion JM-248.  The following language appeared in the bill analysis prepared for the introduced version of the bill, but was not updated as the bill underwent substantive changes:

> The Texas Open Meetings Act (TOMA) . . . was enacted in 1967 to ensure that important governmental decisions are made in public meetings.  Several problems under TOMA currently are frustrating this purpose of 'government in the sunshine.'  Courts and the

> attorney general have ruled that members of a public body may meet without complying with TOMA to receive information and ask questions of a third party. [The analysis then mentions Attorney General Opinion JM-248 and its reliance on an appellate court case]. . . . In _The Pea Picker, Inc. v. Reagan_, . . . the court held that receiving information from employees was not a 'meeting' because no 'deliberation' had occurred in that there was no exchange <u>between</u> the members.  (Emphasis in original.)

Bill Analysis, S.B. 168, 70th Leg. (1987). Since Attorney General Opinion JM-248 relied on the definitions of "meeting" and "deliberation," Senate Bill 168 sought to bring such briefing sessions within the coverage of the Open Meetings Act by amending those definitions.

These amendments to subsections 1(a) and 1(b) of the Open Meetings Act appeared in Senate Bill 168 as introduced and in the bill as adopted by the legislature. The introduced bill was reported adversely by the Senate Committee on State Affairs and a committee substitute was reported favorably. The committee substitute included the following provision not found in the introduced bill:

> (r) Nothing in this Act shall be construed to require a quorum of the members of a governmental body <u>to confer</u> with an employee or employees of the governmental body <u>in an open meeting</u> where such <u>conference</u> is for the sole purpose of receiving information from the employee or employees or to ask questions of the employee or employees; provided, however, that no discussion of public business or agency policy that affects public business shall take place between the members of the governmental body during the <u>conference</u>.  (Emphasis added.)

V.T.C.S. art. 6252-17, § 2(r).[1]

---

1. A provision on meeting by telephone conference call also codified as section 2(r) was added to the Open Meetings Act by another bill during the same session. S.B. 560, Acts 1987, 70th Leg., ch. 964, § 4, at 3283.

Section 2(r) uses the terms "confer" and "conference" instead of the statutorily defined terms "meeting" and "deliberation" to describe a briefing session. Nearly all of the section 2 exceptions use one or both of the statutory terms. But see id. §§ 2(e) ("consultations" with attorney), 2(p) ("interviews and counseling sessions" between members of Board of Pardons and Paroles and inmates of Department of Corrections). The legislature could have chosen its language to distinguish such conferences from meetings and to remove them completely from the Open Meetings Act, including its notice and record-keeping requirements. On the other hand, the legislature may have thought that the section 2(r) "conference" would involve "a verbal exchange . . . between a quorum of members of a governmental body and any other person" and that it would therefore be a "meeting" at which "deliberations" take place.

The placement of subsection (r) in section 2 does not resolve this ambiguity, since section 2 includes various types of provisions and not merely provisions authorizing a closed session during a meeting subject to the Open Meetings Act.[2] Although several of these provisions authorize executive sessions for governmental bodies subject to the act, others appear to remove some entities completely from the act. Compare V.T.C.S. art. 6252-17, § 2(e), (f), (g), (h), (j), (m), (o), (p), (q) with id. § 2(d), (n). Various other procedural provisions are also included in section 2. See id. § 2(a), (b), (c), (i), (k), (l), (r) (telephone conference calls).

---

2. The Austin Court of Appeals recently issued a decision reconciling the provisions of the Administrative Procedure and Texas Register Act on ex parte communications between agency members in contested cases, see V.T.C.S. art. 6252-13a, § 17, with the Open Meetings Act provisions requiring governmental bodies to deliberate in public. Texas Water Comm'n v. Acker, No. 3-87-244-CV (Tex. App. – Austin, May 17, 1989) (motion for rehearing filed May 31, 1989); see Attorney General Opinion JM-645 (1987) (Administrative Procedure and Texas Register Act creates an exception to Open Meetings Act permitting commission decisions on claims of privilege to be made in a closed meeting); cf. Attorney General Opinion H-1269 (1978) (decision-making process under article 6252-13a, V.T.C.S., is not exempt from requirements of Open Meetings Act). The court's list of provisions authorizing executive sessions did not include section 2(r) of the Open Meetings Act.

The legislative intent must ultimately be found in the language of the statute. See, e.g., Government Personnel Mutual Life Ins. Co. v. Wear, 251 S.W.2d 525 (Tex. 1952). The answer to your question depends on what the language adopted as Senate Bill 168 communicates to the persons who read it.[3] As already pointed out, subsection 2(r) uses the terms "confer" and "conference." The same bill that adopted this provision used very different language in the amendments to subsections 1(a) and 1(b). The legislature's use of language in subsection 2(r) that differs from the language added to the definitions suggests that 2(r) and those definitions do not refer to the same thing.

Moreover, subsection 2(r) provides that "no discussion of public business or agency policy that affects public business shall take place between the members of the governmental body during the conference." "Meeting" is defined as "any deliberation" between certain described persons "at which any public business or public policy over which the governmental body has supervision or control is discussed or considered . . . ." V.T.C.S. art. 6252-17, § 1(a). The quoted phrases are not identical, but their differences are subtle. The phrases are sufficiently similar that a reasonable person could read subsection 2(r) to prohibit the kind of discussion which is a defining characteristic of a "meeting" and therefore to exclude a "conference" from the definition of "meeting." In our opinion, whatever the legislature may have intended, the relevant provisions do not communicate an intent to subject briefing sessions to the Open Meetings Act with the option of holding them in executive session.

The adoption of Senate Bill 168 involved negotiation and compromise between competing interests. If briefing sessions were subject to the Open Meetings Act, the public would receive notice of the time, place, and subject of such sessions, although they could be excluded from the actual briefing. Id. § 3A. Members of the public would thus have

---

3. A review of the testimony on this bill shows conflicting statements by the senate sponsor. See Hearing on S.B. 168 before the Senate Comm. on State Affairs, 70th Leg. (March 23, 1987) (tape recording available from Senate Staff Services Office); Debate on S.B. 168 on the Floor of the Senate, 70th Leg. (April 15, 1987) (tape recording available from Senate Staff Services Office).

access to a minimal amount of additional information about government. The governmental body would have to keep a record of the briefing session as required by section 2A, and this requirement presumably would help enforce the prohibition against board members discussing among themselves "public business or agency policy that affects public business" when involved in a conference under subsection 2(r).

On the other hand, if a governmental body had to comply with the notice requirements prior to briefings by employees, it would have to wait three days or seven days to hear the information, depending on which notice period applies to it. Id. § 3A(h). In the event of an emergency or urgent public necessity, it would have to wait for two hours before the briefing. Id.; see generally Attorney General Opinion JM-985 (1988) (discussing meaning of emergency). This delay would occur before a session in which the governmental body would neither deliberate nor take action, but would only receive some information relevant to its public duties. Delays in the board members' receipt of information needed for their work could interfere with the efficient conduct of public business and might even paralyze the governmental body in matters of great urgency. In weighing these competing interests, the legislature might reasonably have concluded that briefing sessions should be taken completely out of the Open Meetings Act.

Finally, since members of a governmental body are subject to criminal penalties for certain knowing violations of the Open Meetings Act, see V.T.C.S. art. 6252-17, § 4, a contrary interpretation of subsections 1(a) and (b) and 2(r) would raise a constitutional question. The Fifth and Fourteenth Amendments of the United States Constitution prohibit the enforcement of any law that "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Constr. Co., 269 U.S. 385 (1926); see also Baker v. State, 478 S.W.2d 445 (Tex. Crim. App. 1972). A vague statute threatens punishment of people who had no fair warning of what conduct to avoid. See United States v. Cardiff, 344 U.S. 174 (1952). A higher standard of certainty is required of a statute imposing criminal penalties than of one relying on civil enforcement. Kolender v. Lawson, 461 U.S. 352, 358 at n. 8 (1983); see Winters v. New York, 333 U.S. 507 (1948).

We believe that the language of the statute does not fairly warn persons of common intelligence that a sub-

section 2(r) conference is a "meeting" within the Open Meetings Act and that they will be subject to criminal penalties for participation in a conference that is not conducted according to the requirements of the act. Our construction of the statute is thus necessary because of the inclusion of criminal penalties to enforce its procedural provisions.

## S U M M A R Y

Conferences between members of a governmental body and an employee or employees for the sole purpose of receiving information or asking questions are not "meetings" or "deliberations" subject to any requirements of the Open Meetings Act, article 6252-17, V.T.C.S. Subsection 2(r) of the act, adopted by Senate Bill 168 of the 70th Legislative Session, removes the conferences it describes from the coverage of the act.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General