BENSON 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00061-CV







Texas Department of Human Services, Texas Department of Protective 


and Regulatory Services, Janice Caldwell, Burton Raiford, 


Glenn Williams, and Janie Medina, Appellants




v.




Ned Benson, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 92-04888, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








 This appeal asks us to determine whether the Texas Family Code assures confidentiality
to those who report suspected child abuse, notwithstanding the right of the accused to review all
records of the investigation. We must also decide whether the Texas Tort Claims Act waives a
state agency's immunity for damages when a complainant is injured because his identity is
disclosed in writing to the suspects under investigation. Finally we address the state's immunity
for attorney's fees under the Texas Declaratory Judgment Act.




BACKGROUND


 In April 1990 Reverend Ned Benson contacted the Texas Department of Human Services (1)
(the "Department") to report allegations that two members of his congregation were physically
and emotionally abusing their five-year-old twin boys. (2) Benson made the report only after
requesting and receiving assurances that his identity would not be disclosed to the family. In
September 1990 the Department released to the accused information that identified Benson as the
complainant. After learning of Benson's role in reporting the allegations of abuse against them,
the parents filed a one million dollar libel suit against the church and Benson. Several weeks
later, Benson was asked to resign. The libel suit was later dismissed, but it took more than a year
to resolve the ecclesiastical charges.

 In April 1992 Benson filed this lawsuit against the Department, seeking damages under the
Tort Claims Act and declaratory relief requiring the Department to guard the confidentiality of
persons who report child abuse. See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004, 101.021
(West 1986). Benson alleged that the Department's negligence caused his termination and
damaged his reputation; he claimed additional damages for medical expenses to combat depression
and for legal expenses to him and the church. Although the Department notes that many
complaints against Benson contributed to his termination--lack of pastoral care, financial
misfeasance, and declining membership rolls--in August 1993 a jury found that the Department's
negligence was a proximate cause of injury to Benson and awarded damages of $611,000. The
trial court reduced this award to $250,000, the maximum recovery allowed under the Tort Claims
Act. See id. § 101.023. The trial court also rendered a declaratory judgment holding that the
Department violated confidentiality provisions of the Texas Family Code when it revealed
Benson's identity; it ordered the Department not to divulge such information in the future without
a court order. 

 The Department appeals, bringing twenty-four points of error. We will affirm the
declaratory judgment but reverse the damages award, compelled by recent supreme court authority
to hold that Benson has not stated a cause of action under the Tort Claims Act. Benson brings a
cross-point complaining of the trial court's failure to award attorney's fees for the declaratory
relief granted. Because the supreme court has ruled that the Declaratory Judgment Act waives
governmental immunity for attorney's fees, we will remand this issue for the trial court's
consideration.



 TORT CLAIMS


 To clarify our discussion of the issues, we begin by reviewing the details of Rev. Benson's
experience with the Department. Benson had received confidential communications from
members of his congregation that the father and stepmother were mistreating the children but were
accusing the mother of the abuse. (3) Unable to persuade these other individuals to report their
suspicions, Benson called the Department himself in April 1990. Before making his report,
Benson asked Elaine Jones, a Department caseworker, if his call would be confidential: "Now
I mean specifically, you're telling me that there is no way that the people that I call in to talk
about or anyone in their family will ever find out that I called or anything that I say in the course
of this phone call." Jones assured him that his call was confidential and then entered notes of their
hour-long conversation in the Department's file. 

 The suspects of the investigation requested a copy of the Department's file. In September
1990, just minutes before the stepmother was to pick up the file, Jones advised members of the
Department's legal office that she had promised confidentiality to Benson. Attorneys in that office
determined that they had no legal basis for withholding Benson's identity, so the file was released
without redacting his name. 

 Under the doctrine of governmental immunity, the state and its agencies are not liable for
the negligence of employees unless the state consents to be sued through a constitutional or
statutory provision for liability. Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976). 
To waive governmental immunity, the legislature must use clear and unambiguous language. 
Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980). In 1969 the legislature enacted the Texas
Tort Claims Act to waive governmental immunity in limited circumstances. See Tex. Civ. Prac.
& Rem. Code Ann. Ch. 101 (West 1986 & Supp. 1995). Section 101.021 of the Act provides that
the state may be sued and held liable for:



(1) property damage, personal injury, and death proximately caused by the
wrongful act or omission or the negligence of an employee acting within the
scope of his employment if:


 (A) the property damage, personal injury, or death arise from the operation
or use of motor-driven equipment; and


 (B) the employee would be personally liable to the claimant according
to Texas law; and


(2) personal injury and death so caused by a condition or use of tangible
personal property if the governmental unit would, were it a private person,
be liable to the claimant according to Texas law.



Id. § 101.021 (emphasis added). The jury was instructed that it could find the Department
negligent only if it found that the negligence involved the condition or use of tangible personal
property. On appeal, the Department argues that it is immune from liability because the alleged
negligent acts did not involve the use of tangible personal property. Benson counters that the
written report is tangible personal property and that it was the unedited "condition" of this written
report that caused him harm.

 Much judicial ink has been penned in attempts to discern when the negligence of a
governmental unit sufficiently involves tangible personal property to waive governmental
immunity. See, e.g., Texas Dep't of Mental Health and Mental Retardation v. Petty, 848 S.W.2d
680 (Tex. 1992); Robinson v. Central Tex. MHMR Center, 780 S.W.2d 169 (Tex. 1989); Salcedo
v. El Paso Hosp. Dist., 659 S.W.2d 30 (Tex. 1983); Eakle v. Texas Dep't of Human Servs., 815
S.W.2d 869 (Tex. App.--Austin 1991, writ denied); Wilkins v. State, 716 S.W.2d 96 (Tex.
App.--Waco 1986, writ ref' n.r.e.); Christilles v. Southwest Tex. State Univ., 639 S.W.2d 38 (Tex.
App.--Austin 1982, writ ref'd n.r.e.). We need not sort through that historical line of cases
because a recent pronouncement of the supreme court governs Benson's cause of action. In
University of Texas Medical Branch at Galveston v. York, 871 S.W.2d 175, 179 (Tex. 1994), the
court held that while paper can be touched, information recorded on paper is not tangible personal
property. In that medical malpractice cause of action, the court ruled that failure to record
information and failure to rely on information recorded in a medical file does not constitute a use
of tangible personal property that waives governmental immunity:



While the paper on which doctors and nurses may record information about a
patient's condition is tangible in that paper can be seen and touched, information
itself is an abstract concept, lacking corporeal, physical or palpable qualities. 
Information thus, is intangible; the fact that information is recorded in writing does
not render the information tangible property.



Id. at 178-79 (emphasis added). Benson urges us to limit York to its medical malpractice context. 
He insists that he was harmed by the unedited "condition" of the notes, which were released
without redacting his name. Any attempt to distinguish Benson's case from York on this basis
ignores a key similarity: The information contained in the notes harmed Benson, not a physical
condition of the written report itself. As the dissent in York observes and protests, "[I]t is not
the tangible physical file that counts, but the mental informational content, which [the court]
concludes is not 'tangible.'" Id. at 180. 

 Rev. Benson has been poorly treated by Department employees who negligently promised
confidentiality and then ignored those promises in disclosing his identity to suspects under
investigation. The jury decided that he should be compensated for injuries caused by the
Department's negligence. The state, however, is liable only if its governmental immunity has
been waived. York holds that "the Legislature has not, by clear and unambiguous language,
eliminated governmental immunity for injuries resulting from the misuse of information, even if
that information is recorded in writing." Id. at 179. However unfairly Benson was treated, his
cause of action in tort involves the misuse of information recorded in writing, and we reluctantly
hold that it is precluded by York. We sustain the Department's points of error regarding the Tort
Claims Act.



DECLARATORY JUDGMENT


 In response to Rev. Benson's request for declaratory relief, the trial court found that the
Department violated the confidentiality provisions of the Family Code when it divulged Benson's
name to the family suspected of abuse. The court declared that neither the Open Records Act nor
any other section of the Family Code authorizes or requires the Department to identify an
individual who on his own initiative makes a report of child abuse under chapter 34:



The Court further DECLARES that § 34.08 of the Texas Family Code requires
that any person who on his own initiative makes a report made compulsory by
chapter 34 of the Texas Family Code to TDHS, or its successor agency TDPRS,
is entitled to have his report, name and/or identifying characteristics withheld from
disclosure to the parents, the child, their authorized representative, and/or the
general public, except as otherwise ordered by a court of competent jurisdiction. 
Any rule or internal policy of TDHS and/or TDPRS requiring contrary action is
declared invalid.



The trial court declined to award attorney's fees, based on the asserted defense of governmental
immunity. See Texas Dep't of Human Servs. v. Methodist Retirement Servs., 763 S.W.2d 613,
614-15 (Tex. App.--Austin 1989, no writ).

 On appeal, the Department asserts that the trial court erred in granting this declaratory
relief because the Department did not violate section 34.08 of the Family Code. (4) Benson brings
a cross-point complaining of the trial court's refusal to award attorney's fees. 

 We begin by setting forth sections 34.08 and 34.051 of the Family Code in order to read
the two sections together:



34.08 Confidentiality 


(a) Except as provided in Subsections (b) and (c) of this section, the reports,
records, and working papers used or developed in an investigation made under this
chapter are confidential and may be disclosed only for purposes consistent with the
purposes of this code under regulations adopted by the investigating agency.




34.051 Information Relating to Investigation Procedure


As soon as possible after initiating an investigation under this subchapter of a
parent or other person having legal custody of a child, the Texas Department of
Human Services shall provide to the person a brief and easily understood summary
of:



 (1) the department's procedures for conducting an investigation of alleged
child abuse or neglect, including:


 (A) a description of the circumstances under which the department
would seek to remove the child from the home through the judicial
system; and


 (B) an explanation that the law requires the department to refer all
reports of alleged child abuse or neglect to a law enforcement
agency for a separate determination of whether a criminal
violation occurred;


 (2) the person's right to file a complaint with the department or to
request a review of the findings made by the department in the
investigation;


 (3) the person's right to review all records of the investigation unless
the review would jeopardize an ongoing criminal investigation;


 (4) the person's right to seek legal counsel;


 (5) references to the statutory and regulatory provisions governing
child abuse and neglect and how the person may obtain copies of
those provisions; and


 (6) the process the person may use to acquire access to the child if the
child is removed from the home.



Tex. Fam. Code Ann. §§ 34.08, .051 (West Supp. 1995) (emphasis added).

 Essentially the Department argues that it is unable to guarantee confidentiality to those
who report child abuse because it is compelled to allow persons suspected of abuse to review all
records of the investigation "unless the review would jeopardize an ongoing criminal
investigation." The Department believes that this mandate for disclosure trumps the
confidentiality afforded in section 34.08. 

 Specifically, the Department groups those who discuss allegations of abuse into two
categories: (1) complainants, who initially report abuse and are generally afforded confidentiality,
and (2) collateral sources, those individuals contacted by the Department to substantiate
allegations of abuse, whose information is generally not confidential. Additionally, the
Department has adopted an unwritten policy that only the first person who reports abuse can be
a complainant. In this instance, because Benson was not the first to report these allegations of
abuse, he was classified as a collateral source whose identity could not be kept confidential. It
is undisputed that Benson initiated the report and that the Department never advised him that his
report would not be kept confidential. The Department callously asserts that under its "one
complainant" policy, the caseworker's promise of confidentiality could be ignored because it was
not authorized.

 The Department also relies on its even more enigmatic policy of never granting
confidentiality to "professionals" who report child abuse. (5) It is this policy that most disturbs the
chorus of professionals who raise their voices as amicus curiae in support of the declaratory relief
granted below. (6) They argue that denying confidentiality to professionals discourages the reporting
of abuse by those most likely to observe the mistreatment of children: teachers, counselors,
physicians and clergy. The Presbyterian Church raises the additional concern that exposing clergy
to retaliation for following their civil duties poses a profound threat to religious freedom.

 The Department's interpretation of the Family Code's provisions governing confidentiality
and disclosure is entitled to deference unless it contradicts the plain meaning of the statute. See,
e.g., Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993). Here, the
Department's refusal to protect the confidentiality of professionals and collateral sources who are
not the first to report abuse contravenes the mandate of Family Code section 34.08 that reports
be held confidential and "be disclosed only for purposes consistent with the purpose of this code
under regulations adopted by the investigating agency." Tex. Fam. Code Ann. § 34.08(a)
(emphasis added). The two policies regarding professional and collateral complainants were never
adopted as regulations. Indeed, the policies even contradict other agency regulations: (1) 40
Texas Administrative Code § 700.103 provides that a child protective services client may review
all information in the client's case record except the identity of the complainant; and (2) 40 Texas
Administrative Code § 700.107 directs staff to protect the identity of persons who have made
reports of abuse by deleting their names, references to their relationship to the child and family,
and locating information about them before releasing Department reports to individuals named
in Family Code section 34.08. 40 Tex. Admin. Code §§ 700.103, .107 (1994). More generally,
40 Texas Administrative Code § 700.102 specifies that information about a child protective
services client is confidential and may not be released except as authorized by state or federal
regulation, court direction, attorney general's opinion, or the Texas Department of Protective and
Regulatory Services' rules concerning disclosure of information. 

 Furthermore, the Department's interpretation of its duty to disclose the identity of
professional and collateral complainants ignores the confidentiality statutorily guaranteed to those
who report child abuse and neglect. The Family Code directs the Department to promulgate and
distribute a confidential form to be used in reporting child abuse: "The form shall include a
statement that the child abuse reports are confidential and that information contained in the
reports, including the name of the person making the report, may be used only for the purposes
consistent with the investigation of child abuse." Tex. Fam. Code Ann. § 34.011 (West Supp.
1995). The duty to report child abuse is sweeping and makes no exceptions for clergy,
physicians, mental health professionals or teachers: "A person having cause to believe that a
child's physical or mental health or welfare has been or may be adversely affected by abuse or
neglect by any person shall report [the suspected abuse]." Id. § 34.01 (emphasis added). Failure
to report suspected abuse is a Class B misdemeanor. Id. § 34.07. Indeed, teachers, nurses,
doctors, day-care employees and other professionals who learn of suspected abuse must make a
report within forty-eight hours. Id. § 34.02(d). "Anonymous reports, while not encouraged, will
be received and acted on." Id. The Code affords immunity from civil or criminal liability to
those who report abuse in good faith. Id. § 34.03.

 We hold that the trial court properly declared that confidentiality is central to the Family
Code provisions governing the reporting of child abuse. Those provisions reflect a legislative
determination that granting immunity and confidentiality to complainants will encourage the
reporting of child abuse. The trial court's declaratory relief promotes this legislative goal. The
Department must protect all individuals who report child abuse, without distinction between
professionals and nonprofessionals and without limitation to who calls first. Rev. Benson's
experience reveals how retaliation may devastate the life of a concerned citizen who fulfills his
statutory duty to report suspected child abuse, absent the protection of confidentiality. This
particular case also illustrates the serious infringement of religious liberty that may flow from
disclosing the identity of clergy who are required to report child abuse. (7) Furthermore, the trial
court's judgment effectively harmonizes the two sections of the Family Code by granting the
accused a right to review all records so long as the confidentiality of the complainant is preserved;
those who legitimately require information about a complainant may obtain it through a court
order. The legislative goal of encouraging the reporting of child abuse is better reflected in the
trial court's balancing of the rights of the accused and the rights of those required to report abuse
than in the Department's policy of disclosing the identity of all professional and collateral
complainants. We overrule the Department's points of error regarding the trial court's declaratory
relief.



ATTORNEY'S FEES


 The trial court relied on this court's holding in Texas Department of Human Services v.
Methodist Retirement Services, 763 S.W.2d 613 (Tex. App--Austin 1989, no writ), to hold that
the Department was immune from liability for attorney's fees under the Declaratory Judgment
Act. See also Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (authorizing the award of reasonable
and necessary attorney's fees). In Texas Education Agency v. Leeper, 37 Tex. Sup. Ct. J. 968,
977 (June 15, 1994) (motion for rehearing pending), the supreme court overruled this decision: 
"We conclude that by authorizing declaratory judgment actions to construe the legislative
enactments of governmental entities and authorizing awards of attorney fees, the DJA necessarily
waives governmental immunity for such awards." We therefore reverse this aspect of the
judgment and remand this portion of the cause for the trial court to reconsider the request for
attorney's fees in light of this new authority.



CONCLUSION


 Relying on York, we conclude that the negligence found by the jury did not involve the
use or condition of tangible personal property sufficient to waive the Department's immunity for
Rev. Benson's tort claims. We therefore reverse the award of damages and render judgment that
Benson take nothing. Based on the recent authority of Leeper, we reverse the trial court's ruling
that the Department is immune from liability for attorney's fees and remand the issue of attorney's
fees under the Declaratory Judgment Act for the trial court's consideration. The remainder of the
judgment is affirmed.



 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Powers and B. A. Smith

Reversed and Rendered in Part; Reversed and Remanded in Part; and Affirmed in Part

Filed: February 8, 1995

Publish

1.   Effective September 1, 1992, the duties of the Texas Department of Human Services
were transferred to a newly created agency, the Texas Department of Protective and
Regulatory Services. Tex. Rev. Civ. Stat. Ann. art. 4413(503) (West Supp. 1995). The new
agency was added as a party, and the declaratory relief granted runs against it by and through
its Commissioner in her official capacity. 
2.   The children's biological father and their stepmother were accused of child abuse. The
stepmother and her family were prominent members of Benson's congregation. The boys'
biological mother was not a member of the congregation and was not named in the allegations
of abuse. 
3.   There appeared reason for concern: the young boys suffered severe post-divorce
emotional trauma after their father's remarriage, and one was admitted to a psychiatric
hospital.
4. The Department also asserts for the first time in a post-submission letter brief that the
trial court did not have jurisdiction to render a declaratory judgment. The Department appears
to argue that Benson appended his request for declaratory judgment to his tort claim merely as
an "avenue to attorney's fees." See Weaver v. AIDS Servs. of Austin, 835 S.W.2d 798, 803
(Tex. App.--Austin 1992, writ denied). As in Weaver, we disagree with that characterization
in this case: Benson had an interest in and his petition sought prospective relief from the
Department's disclosure of his name in connection with this case or others with which he
would become involved. As we discuss in detail below, Benson's position as a clergyman
makes him likely to learn of child abuse, which he is obligated by law to report. "[W]hen a
question presented is one of public interest and of recurrent character, jurisdiction is not lost
because a threatened act has become an accomplished fact." Woodruff v. City of Laredo, 686
S.W.2d 692, 694 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.).
5.   Janie Medina, a legal assistant for the Department, testified that she did not know under
what authority the Department had decided to release the names of professionals who reported
abuse. She testified that as a "courtesy" the name of a professional might be deleted, but said
there were no guidelines governing when to disclose or protect a professional's identity. 
Later, J.B. Reynolds, Associate Commissioner for Legal Services of the Department, told the
court that the Department developed this policy in response to various opinions and letter
advisories from the Attorney General construing the Open Records Act.
6. Amicus briefs were received from the Presbyterian Church (U.S.A.), Texas Organization
of Rural and Community Hospitals, Texas Classroom Teachers Association, Texas Counseling
Association, Association of Texas Professional Educators, Texas Medical Association and
Texas Osteopathic Medical Association.
7.   Because Rev. Benson does not challenge the right of the state to compel his cooperation,
we do not address the right of the state to compel ministers or other professionals to report
child abuse discovered through confidential communications. The only privileged
communications recognized by the Family Code provisions governing child abuse are
confidential communications between attorney and client. Tex. Fam. Code Ann. § 34.04
(West 1986).