Opinion issued June 8, 2006

















In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00873-CV




 THE HOUSTON CHRONICLE PUBLISHING CO. AND 
PEGGY O’HARE, Appellants

V.

HONORABLE TOMMY THOMAS, SHERIFF OF HARRIS COUNTY,
Appellee




On Appeal from the the 165th District Court
Harris County, Texas
Trial Court Cause No. 2004-45352




 
 
O P I N I O N
          Appellants, The Houston Chronicle Publishing Co. (“Chronicle”) and Peggy
O’Hare, filed suit under the Texas Public Information Act


 and Texas Uniform
Declaratory Judgment Act


 seeking a writ of mandamus, declaratory relief, and
attorney’s fees against appellee, the Honorable Tommy Thomas, Sheriff of Harris
County. Both parties filed motions for summary judgment. The trial court denied as
moot both motions for summary judgment. On appeal, appellants argue that (1) the
trial court erred in finding that it lacked subject-matter jurisdiction over the case
because the “public interest” exception to the mootness doctrine is applicable here;
(2) even if the public interest exception does not apply, the trial court nevertheless
erred in dismissing appellants’ claims for declaratory judgment and attorney’s fees;
and (3) the trial court erred in denying their motion for summary judgment because
appellants are entitled to judgment as a matter of law on their claims for mandamus
and declaratory relief. For the reasons that follow, we affirm.
BACKGROUND
          In the spring of 2004, Hiji Harrison was shot to death by Harris County
Sheriff’s Deputy William Wilkinson during an early morning traffic stop. This was
the second suspect Wilkinson had shot in the span of eight days. O’Hare, a reporter
for the Chronicle, filed a request under the Texas Public Information Act, asking that
the Sheriff’s Department provide a copy of Harrison’s autopsy report. The Sheriff’s
Department, via the Harris County Attorney’s Office, sought an opinion from the
Attorney General of Texas to determine whether an exception to the Public
Information Act applied under the present circumstances. The Sheriff’s Department,
in a letter accompanying the request, stated that “the release of the requested
information . . . would interfere with the detection, investigation, and prosecution of
crime” because the information related to a pending homicide investigation.
          The Attorney General granted the Sheriff’s Department’s request and
concluded that an exception to the Public Information Act applied.


 In August 2004,
O’Hare and the Chronicle filed suit against Thomas, asking the court to order Thomas
to release the autopsy report, and seeking a declaratory judgment regarding
construction of article 49 of the Texas Code of Criminal Procedure


 and the Texas
Public Information Act. Over six months passed, and with Thomas still refusing to
release the autopsy report, O’Hare and the Chronicle filed a motion for summary
judgment; eighteen days later, Thomas filed his own motion for summary judgment,
arguing that because he had released the autopsy report to the Chronicle the day
before he filed his motion, the trial court should deny O’Hare and the Chronicle any
relief they sought. The trial court subsequently denied both parties’ motions for
summary judgment as moot. O’Hare and the Chronicle filed a motion for
reconsideration, to which Thomas responded. The trial court denied the motion. In
response to a request from the trial court, O’Hare and the Chronicle filed a motion for
entry of final judgment and trial court rendered judgment shortly thereafter. O’Hare
and the Chronicle promptly filed their notice of appeal.
Jurisdiction
          Thomas first argues that this Court lacks subject-matter jurisdiction over
appellants’ appeal because their notice of appeal was not timely filed. That is,
Thomas insists that the appellate timetable began to run once the trial court denied
both parties’ motions for summary judgment as moot because that was a final
judgment disposing of the claims and parties in the case.
          It has long been the rule in Texas that “an order overruling a motion for
summary judgment [is] interlocutory in nature and hence not appealable.” 
Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex. 1966). The supreme court
did recognize an exception to this rule in Cincinnati Life Insurance Co. v. Cates,
holding that “the rule does not apply when a movant seeks summary judgment on
multiple grounds and the trial court grants the motion on one or more grounds that
dispose of all the non-movant’s claims, but denies, or fails to rule, on one or more
other grounds presented in the motion and urged on appeal.” 927 S.W.2d 623, 625–26
(Tex. 1996). Another exception is when the statute at issue explicitly provides for an
interlocutory appeal; for example, when sovereign immunity is asserted. See CSR
Ltd. v. Link, 925 S.W.2d 591, 602 n.8 (Tex. 1996) (citing to section 51.014 of the
Texas Civil Practice and Remedies Code, which allows for an appeal from a denial
of summary judgment in just such a case). Neither exception is applicable in this
case; therefore, the appellate timetable could not have started on the day the trial
court denied both parties’ motions for summary judgment.
          Thomas relies on Lehmann v. Har-Con Corporation, which held that a
summary judgment order is not final unless “it actually disposes of every pending
claim and party or unless it clearly and unequivocally states that it finally disposes of
all claims and all parties.” 39 S.W.3d 191, 205 (Tex. 2001). There is no doubt here
that neither order denying the respective summary judgments “unequivocally” stated
that it was meant as a final judgment. Id. However, Thomas asks us to focus on the
language “dispos[ing] of every pending claim.” Id. 
          Lehmann directed the intermediate appellate courts to “of course” analyze the
record in determining whether an order disposes of all pending claims, id. at 205–06,
giving the example of an order granting summary judgment that states “plaintiff take
nothing by his claims against X.” Id. at 206. This would be an example of a final,
appealable summary judgment order (as long as there were only one plaintiff and one
defendant involved in the lawsuit). Id. The Court further said that “if the language
of the order is clear and unequivocal” then the order must be treated as final (unless
there is a concrete indication that the judgment was not meant to be final). Id. Lastly,
the court stressed that the guiding principle in determining whether an order is final
is that the right to an appeal should never be lost due to overly technical application
of the law. Id. at 205.
          The record does not indicate that either party treated the date the trial court
denied both motions as moot as starting the appellate timetable clock—in fact it
indicates just the opposite. O’Hare and the Chronicle filed a motion for
reconsideration shortly after the trial court denied the motions, and Thomas filed a
response to their motion for reconsideration. At the trial court’s behest, O’Hare and
the Chronicle filed a motion for entry of final judgment. Given that there is no
language in either order denying the motions for summary judgment as moot that
would “unequivocally” mean that the parties should treat it as a final judgment,
Lehmann, 39 S.W.3d at 205, and in light of the general rule that a party cannot appeal
from a denial of a motion for summary judgment, Cates, 927 S.W.2d at 625–26, for
us to adopt Thomas’s argument would mean ignoring the supreme court’s
admonishment that we should not apply Lehmann in a manner so technical that it
would operate to deny the right to an appeal. Id. We hold that under these facts the
appellate timetable did not begin to run when the trial court denied both parties’
summary judgment motions as moot, but instead began when the trial court rendered
final, written judgment.
Public Interest Exception
          O’Hare and the Chronicle’s first point of error is that the trial court erred in
denying their motion for summary judgment as moot because the “public interest”
exception to the mootness doctrine is applicable here.
          “The mootness doctrine limits courts to deciding cases in which an actual
controversy exists.” F.D.I.C. v. Nueces County, 886 S.W.2d 766, 767 (Tex. 1994)
(citing Camarena v. Tex. Employment Comm’n, 754 S.W.2d 149, 151 (Tex. 1988)). 
A controversy “must exist between the parties at every stage of the legal proceedings,
including the appeal.” Williams v. Lara, 52 S.W.3d 171, 184 (Tex. 2001). The Texas
Supreme Court has “recognized two exceptions to the mootness doctrine: (1) the
‘capable of repetition’ exception and (2) the ‘collateral consequences’ exception.” 
Nueces County, 886 S.W.2d at 767. In Nueces County, the supreme court noted that
the intermediate appellate court had reached the merits of the case under the public
interest exception, but decided that the lower court erred in reaching the merits and
dismissed the case as moot. Id. at 766. The supreme court, in briefly commenting
upon the public interest exception, stated:
This Court has not previously decided the viability of the public interest
exception, and we find it unnecessary to reach that issue here. As
articulated by the court of appeals, the public interest exception permits
judicial review of questions of considerable public importance if the
nature of the action makes it capable of repetition and yet prevents
effective judicial review. Thus, a common element of both the public
interest exception and the capable of repetition exception is that the
complained of action be capable of repetition yet not effectively
reviewable. Even if we were to recognize a public interest exception to
the mootness doctrine, this case does not meet the suggested
requirements.

Id. 
          The Texas Supreme Court has as yet not recognized the public interest
exception to the mootness doctrine and judicial restraint compels us to wait until that
court decides to resolve the split in authority in the intermediate appellate courts. 
See, e.g., Securtec, Inc. v. County of Gregg, 106 S.W.3d 803, 810–11 (Tex.
App.—Texarkana 2003, pet. denied) (recognizing the public interest exception); 
State Farm Mut. Automobile Ins. Co. v. Carmichael, No. 05-0600990-CV, 1998 WL
122409 *1 n.3 (Tex. App.—Dallas March 20, 1998, no pet.) (not designated for
publication) (refusing to recognize public interest exception); Univ. Interscholastic
League v. Buchanan, 848 S.W.2d 298, 304 (Tex. App.—Austin 1993, no pet.)
(recognizing the public interest exception). Furthermore, there is a case from this
court, albeit unpublished, that declined to recognize the exception. See Fowler v.
Bryan Indep. School Dist., No. 01-97-01001, 1998 WL 350488 *6 n.15 (Tex.
App.—Houston [1st Dist. July 2, 1998, no pet.) (not designated for publication) 
(stating that “until [the Texas Supreme Court] acknowledges [the public interest
exception]—we will recognize only [the capable of repetition and collateral
consequences] exceptions” but, in any event, recognizing that the exception does not
apply to present facts). While Fowler is not technically precedent, continuity within
our jurisdiction further counsels against upsetting future litigant’s expectations. 
Therefore, we hold that until and unless the Texas Supreme Court recognizes the
public interest exception to the mootness doctrine, it is not a viable legal theory in our
jurisdiction. Accordingly, we overrule O’Hare and the Chronicle’s first point of
error.
Declaratory Judgment
          O’Hare and the Chronicle’s second point of error is that even if the public
interest exception is not applicable, the trial court erred in ruling that the release of
the autopsy report rendered the case moot instead of determining the parties’ rights
and obligations under the Texas Uniform Declaratory Judgment Act (UDJA). 
Specifically, O’Hare and the Chronicle argue that we should instruct the trial court
to construe the relevant portions of the Texas Public Information Act in relation to
(1) whether appellants were legally entitled to that particular autopsy report and (2)
whether, as a general proposition, autopsy reports and photographs of individuals
who have died while in law enforcement custody constitute public information not
subject to any statutory exception. That is, neither of these issues, so their argument
goes, was resolved by Thomas’s release of the autopsy report and therefore the trial
court erred in refusing to construe the act. 
          A declaratory judgment is available only when there is a justiciable controversy
between the parties. Brooks v. Northglen Ass’n, 141 S.W.3d 158, 163–64 (Tex.
2004). That is, the Declaratory Judgment Act does not empower a court to render an
advisory opinion or to rule on a hypothetical fact situation. Id. at 164. There are two
prerequisites for a declaratory judgment action: (1) there must be a real controversy
between the parties and (2) the controversy must be one that will actually be
determined by the judicial declaration sought. Tex. Civ. Prac. & Rem. Code Ann.
§ 37.008 (Vernon 1997); see also Brooks, 141 S.W.3d at 163–64. “An advisory
opinion is one which does not constitute specific relief to a litigant or affect legal
relations.” Lede v. Aycock, 630 S.W.2d 669, 671 (Tex. App.—Houston [14th Dist.] 
1981, no writ) (citation omitted). 
          O’Hare and the Chronicle do not satisfy the prerequisites for a declaratory
judgment action. There is no more need to determine, as they request, whether they
were legally entitled to the autopsy report from Thomas—they received it. O’Hare
and the Chronicle are thus asking for an impermissible construction of the statute
based on a hypothetical fact situation. See Brooks, 141 S.W.3d 163–64. Secondly,
we cannot order the trial court to determine whether, “as a general proposition,”
autopsy reports of individuals who have died at the hands of law enforcement officers
always constitute public information not subject to any statutory exception. We fail
to see how this would constitute anything other than an impermissible advisory
opinion. O’Hare and the Chronicle offer no argument to establish that such a ruling
would affect legal relations between the parties or constitute specific relief. See
Aycock, 630 S.W.2d at 671. 
          At oral argument, O’Hare and the Chronicle brought to our attention City of
Waco v. Tex. Nat’l Res. Conservation Comm’n, 83 S.W.3d 169 (Tex. App.—Austin
2002, pet. denied). This case dealt with whether a purely legal inquiry—whether a
state administrative agency’s could continue to issue new permits to dairies to
discharge waste into a river running through Waco when the agency was not in
compliance with federal environmental regulations that had been adopted by state
law. Id. at 172–73, 177. The Austin Court of Appeals concluded that under the
UDJA the City’s claims could go forward; that is, they were “ripe” because “no
additional facts” were needed to interpret the regulatory scheme at issue. Id. at
177–78. This case does not do the work O’Hare and the Chronicle ask of it: the City
of Waco Court still applied the justiciable controversy test delineated above and
found that the case had reached the requisite ripeness. A claimant may, as O’Hare
and the Chronicle contended at argument, “obtain a declaration of rights . . . under a
statute,” but this does not obviate the need for a live controversy. Anyway, ripeness
is not mootness (the grounds on which we decide this case), similar though they may
be. 
          We are also not persuaded by their argument that the following sentence from
Thomas’s trial court filings constitutes a concession from him that there is a live
controversy: “The plaintiff may or may not request future autopsy reports and the
Defendant may or may not invoke an exception to the open records Act [sic] and send
the request to the Attorney General.” As noted by Thomas, in context, that sentence
reads:
Plaintiff incorrectly claims that the residue of the case is appropriate for
a declaratory judgment; however, Plaintiff fails to prove that there is any
remaining controversy between the parties. The plaintiff may or may
not request future autopsy reports and the Defendant may or may not
invoke an exception to the open records Act [sic] and send the request
to the Attorney General. It should be noted that Plaintiff sued Defendant
for complying with the open records decision of the Texas Attorney
General. Plaintiff cannot state with certainty how the Attorney General
may or may not rule on a future request because each request by its
nature is unique, just as each law enforcement situation is unique
(emphasis omitted).

This hardly amounts to a concession that there is a live controversy. 
          Equally unavailing is O’Hare and the Chronicle’s argument that The Pea
Picker, Inc. v. Reagan and Texas Department of Human Services v. Benson are
analogous to the present facts. 632 S.W.2d 674, 674 (Tex. App.—Tyler 1982, writ
ref’d n.r.e.); 893 S.W.2d 236 (Tex. App.—Austin 1995, writ denied). 
          In Pea Picker, local government officials had met to discuss jail conditions but
did not notify The Pea Picker because they did not believe (or did not know) whether
this sort of meeting fell under the statute. Pea Picker, 632 S.W.2d at 675, 676. 
These local government officials then brought suit against The Pea Picker, seeking
a judgment declaring whether meetings of the government officials to discuss the
local jail conditions were public meetings under the Open Meetings Act. Id. at 674. 
The trial court granted the government’s motion for summary judgment, determining
that such meetings did not come within the meaning of the statute. Id. at 675.
          The Pea Picker appealed, arguing that there was no actual controversy that
wouldgive rise to a declaratory judgment. Id. at 676. The Tyler Court of Appeals
disagreed, stating, “Since the parties were obviously uncertain whether the meeting
in question was required to be open” the trial court was within its power to pass on
the question posed by the declaratory judgment request. Id. at 677.
          O’Hare and the Chronicle contend that this parallels the current situation—
even though Thomas had turned over the autopsy report, both parties were still
uncertain as to whether such autopsy reports are always to be turned over in the future
without exception. And they are correct, insofar as the analogy goes. However, more
important for present purposes is that the reasoning of the Tyler Court of Appeals is
problematic when squared with the test laid out by the Texas Supreme Court in
Brooks. The Pea Picker Court, it appears to us, wrote an advisory opinion—if the
meeting had already occurred, there was no live controversy, thereby precluding a
declaratory judgment from resolving the controversy. See Brooks, 141 S.W.3d at
163–64 (“A declaratory judgment is appropriate only if a justiciable controversy
exists as to the rights and status of the parties and the controversy will be resolved by
the declaration sought.”). 
          As we have concluded, there is no live controversy in this case under the
present facts. Therefore, we decline to follow the reasoning of the Pea Picker court.
          In Benson, Reverend Ned Benson informed the Texas Department of Human
Services that two members of his congregation had been physically and emotionally
abusing their two young children. 893 S.W.2d at 237–38. Before divulging the
information, Benson asked for and received assurances that the Department would not
reveal his identity. Id. at 238. The Department did. Id. Benson and his church were
sued for libel, and he was eventually asked to leave his post at the church. Id. 
Benson then filed a lawsuit against the Department, asking, among other things, for
declaratory relief “requiring the Department to guard the confidentiality of persons
who report child abuse.” Id. The trial court rendered judgment declaring that “the
Department violated confidentiality provisions of the Texas Family Code when it
revealed Benson’s identity.” Id. After analyzing the relevant portions of the Family
Code, the appeals court, holding that the trial court had correctly construed the
statutory provisions, affirmed the declaratory judgment. Id. at 240–42. 
          O’Hare and the Chronicle argue that, like the plaintiff in Benson, they seek
prospective relief in the form of a declaration by the trial court construing the statute
relevant to the dispute. Moreover, they argue that “the Benson Court was required
to consider its jurisdiction over the case . . . and implicitly found that it had subject-matter jurisdiction to hear the case.” 
          Be that as it may, O’Hare and the Chronicle are attempting to make the holding
in Benson stretch beyond its capability. The Benson Court was construing the
substance of the trial court’s declaratory judgment, i.e., whether the trial court
properly construed the Family Code. The question of mootness was never an issue
in that case. Even granting for the sake of argument that, as O’Hare and the
Chronicle put it, the Benson Court “implicitly found” that it had subject-matter
jurisdiction (which, we agree, it had), the reason that court felt comfortable in
affirming the trial court’s prospective relief in construing the Family Code was
because 
Benson had an interest in and his petition sought prospective relief from
the Department’s disclosure of his name in connection with this case or
others with which he could become involved. Benson’s position as a
clergyman makes him likely to learn of child abuse, which he is
obligated by law to report. When a question presented is one of public
interest and of recurrent character, jurisdiction is not lost because a
threatened act has become an accomplished fact.

Benson, 893 S.W.2d at 240 n.4 (emphasis added). 
          To reiterate: we agree with O’Hare and the Chronicle that the matter may be
one of public interest—the facts arouse suspicion of a police officer who is too quick
to resort to deadly force, certainly something the public should be aware of. 
However, they have shown no evidence that this is an act of recurrent character. 
There is no evidence of past situations or relevant case law that would lead to an
inference that Thomas has a de facto policy of stonewalling the press. Moreover, if
the information was as time-sensitive as O’Hare and Chronicle claim it to be, we
question why nearly seven months passed from the filing of the lawsuit to the filing
of a motion for summary judgment. Benson is distinguishable on this important
point, and we reject O’Hare and the Chronicle’s contention that the trial court erred
in refusing declaratory judgment relief. Accordingly, we overrule their second point
of error.
Mandamus Relief
          O’Hare’s and the Chronicle’s final point of error is that the trial court erred in
denying their motion for summary judgment as a matter of law on their claims for
mandamus and declaratory relief. Having already resolved their argument regarding
declaratory relief, we examine their argument regarding mandamus relief.
          O’Hare’s and the Chronicle’s original petition for mandamus asked the trial
court to grant the following relief: “That an order of mandamus issue compelling
Sheriff Thomas to release the autopsy report of Hiji Harrison.” Because O’Hare and
the Chronicle have been given Harrison’s autopsy report, there is nothing for us to
review on appeal. Accordingly, we overrule their third point of error.
CONCLUSION
          We affirm the judgment of the trial court.
 
                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Chief Justice Radack, and Justices Taft and Nuchia.